[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE #125
The defendants have moved to strike counts one, four and five of the substituted complaint on the ground that the plaintiffs have failed to cure the defects noted by the court in its previous decision to strike the same counts. For the reasons that follow, the court concludes that the plaintiffs have failed again to make a prima facie case that the defendants' CUTPA violation was the proximate cause of the plaintiffs' economic injury (count one), that the defendants violated any statutory or common law trademark law (count four), and that the defendants violated the state antitrust laws (count five).
The plaintiffs, John M. Heath, Jr., Jose Casillo and Fred M. Johnson, were former employees of the defendant, Micropatent, a New York partnership formerly doing business in New Haven and now in East Haven, Connecticut. Micropatent terminated the plaintiffs' employment in 1995.
The plaintiffs maintain that they jointly invented a method for the placement of a self-adhesive label on compact discs so that the labels were properly aligned and applied to CD-ROMS ("the method"). The method was the subject of a patent application filed in 1995. The three plaintiffs, together with the defendants Gregory R. Veilleux and William J. Dufault, were signatories to the patent application and declaration, which recited the fact of the assignment of the patent rights to Micropatent by all five signatories. The United States Patent Office issued a patent in 1996. The plaintiffs allege that Veilleux and Dufault, signatories on the patent application as co-inventors, did not take part in the inventing process and in fact were not inventors of the patent. The plaintiffs claim to be the sole inventors of the patented method. They maintain that their execution of written assignments of their rights in the patent to Micropatent does not divest their interests in the method or the patent because those assignments lacked consideration. CT Page 16709
On June 16, 1999, the plaintiffs filed a five-count substituted complaint. Count one alleges that the defendants violated General Statutes § 42-110a et seq. (CUTPA) for failing to comply with General Statutes § 35-1 and for converting the plaintiffs' property interest in the method and the patent through fraudulent or unscrupulous means. Count two seeks to quiet title in the patent. Count three alleges conversion of the method and the patent under common law. Count four alleges that the defendants' use of the mark "NEATO" in marketing certain products covered by the claims of the patent violates Connecticut's trademark statute, General Statutes § 35-11a et seq. Count five alleges a violation of the Connecticut Antitrust Act, General Statutes § 35-24 et seq.
In 1997, the defendants had filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction over exclusively federal claims. The court, Fracasse, J., denied the motion, and the defendants then filed a request to revise, which resulted in the filing of a revised complaint on September 9, 1998. Later that month, the defendants filed a motion to strike each of the five counts in the complaint, as amended by the revised pleading. On June 4, 1999, the undersigned issued a memorandum of decision, granting the defendants' motion to strike as to counts one, four and five of the complaint.
The court struck count one because the complaint failed to allege any injury as a result of the defendants' alleged violation of General Statutes § 35-1. (Memorandum of Decision Re Defendant's Motion to Strike #119, pp. 7-8). As to count four, the court stated that "the plaintiffs have not made sufficient allegations to support a common law trademark claim, because they have failed to allege ownership or prior use of the `NEATO' mark and because they have not alleged an exclusive right to use the '001 patent." (Id., p. 17.) In addition, the court stated that "the plaintiffs have not made any factual allegations regarding particular false or fraudulent statements made by the defendants in the procurement of the registration of `NEATO' with the Secretary of State." (Emphasis in original.) (Id., pp. 18-19.) As to count five, the court stated that "without any allegations regarding the relevant market, the plaintiffs have failed to state an antitrust claim for which relief may be granted." (Id., p. 25.)
On June 16, 1999, the plaintiffs filed a substituted complaint which purported to correct the deficiencies noted by the court in CT Page 16710 its memorandum of decision. On July 21, 1999, the defendants filed the current motion to strike counts one, four and five of the substituted complaint. "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39; see Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial." Gulack v. Gulack,30 Conn. App. 305, 309, 620 A.2d 181 (1993).
"The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. MiddlesexMutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). "A motion to strike admits all facts well pleaded." Parsons v.United Technologies Corp., 243 Conn. 66, 68, 700 A.2d 655 (1997). Practice Book § 10-39 "allows for a claim for relief to be stricken only if the relief sought could not be legally awarded."Pamela B. v. Ment, 244 Conn. 296, 325, 709 A.2d 1089 (1998). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Id., 308. However, "[the motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mingachos v. CBS,Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215,618 A.2d 25 (1992).
F. CUTPA Claim (Count One)
The revised count one remains the same as count one in the original complaint, except that paragraphs 25 and 26 have been added. The revised count one alleges that the defendants violated CUTPA in two ways: first, that Micropatent operated a business under an assumed name without registration in violation of General Statutes § 35-1; and second, that the defendants converted the plaintiffs' property interest in the method and the patent through fraudulent, immoral, unethical and unscrupulous CT Page 16711 means, including the use of the nomenclature "NEATO."
Section 35-1 of the General Statutes prohibits anyone from conducting or transacting business under any fictitious or assumed business name without registering with the town clerk or with the secretary of the state. Specifically, the statute provides that "[f]ailure to comply with the provisions of this subsection shall be deemed to be an unfair or deceptive trade practice under subsection (a) of section 42-110b." General Statutes § 35-1. Section 42-110b(a) of the General Statutes prohibits anyone from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
In this case, it is not disputed that Micropatent operated a business under an unregistered assumed name in violation of General Statutes § 35-1. Micropatent's failure to register its assumed trade name is therefore a per se CUTPA violation under General Statutes § 35-1. Even though "[s]ection 35-1
does not itself create a private cause of action," it "can be a basis of a cause of action if facts necessary to support a CUTPA claim are pleaded." 1800 Investors v. Fairfield Lumber, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 113507 (July 30, 1991, Ryan, J.) (6 C.S.C.R. 769).
"[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited actand that, `as a result of' this act, the plaintiff suffered an injury. The language `as a result of' requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." (Emphasis in original.) Abrahams v. Young Rubicam,Inc., 240 Conn. 300, 306, 692 A.2d 709 (1997). "The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." (Internal quotation marks omitted.) Id.
The revised count one repeats the stricken count one in the original complaint with regard to the issue of causation. As a result, it has the same defect in failing to show a causal nexus between the defendants' failure to register the partnership certificate and the plaintiffs' alleged economic injuries, such as loss of profits. The plaintiffs admit to being employees of the partnership, Micropatent; they do not claim to be its owners. Unless the plaintiff alleges specific facts, they fail to show CT Page 16712 how they as employees suffered harm as a result of Micropatent's failure to register their assumed trade name. (Memorandum of Decision Re Defendant's Motion to Strike #119, pp. 7-8); see alsoHaesche v. Kissner, 229 Conn. 213, 222-23, 640 A.2d 89 (1994) ("In order to prove a private cause of action under CUTPA, the plaintiff must show not only that [the defendant] engaged in an unfair trade practice, but that he suffered harm as a result.").
As for the conversion-based CUTPA claim, the court, Fracasse,J., has ruled that neither the inventorship status of the defendants, Veilleux or Dufault, nor their assignments to Micropatent are at issue.[1] (Memorandum of Decision Re: Defendants' Motion to Dismiss #106, pp. 7-9.) Micropatent has at least a colorable defense that it is a co-owner of the disputed patent and is free to commercialize the patent as it wishes. See35 U.S.C. § 262 ("In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States . . . without the consent of and without accounting to the other owners"); Schering Corp. v. Roussel-UCLAF, 104 F.3d 341,344 (Fed. Cir. 1997) ("Unless the co-owner has given up these rights through an `agreement to the contrary,' 35 U.S.C. § 262, the co-owner may not be prohibited from exploiting its rights in the patent, including the right to grant licenses to third parties on whatever conditions the co-owner chooses."). The plaintiffs have failed to plead any facts to make a prima facie case of CUTPA violation based on immoral, unethical, oppressive, or unscrupulous conversion by the defendants.
Furthermore, "§ 35-1 is intended to protect creditors and not employees." Perez v. Ellis, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 552958 (April 16, 1996, Spada, J.). "[E]ven though as an incidental benefit §35-1 may provide some protection to persons transacting business under a trade name, it is primarily intended to protect creditors by giving them constructive notice of the contents of the trade name certificate." Metro Bulletins Corp. v. Soboleski,30 Conn. App. 493, 500, 620 A.2d 1314, cert. granted on other grounds,225 Conn. 923, 625 A.2d 823 (1993). The plaintiffs allege that they were employees, not creditors. The statute is therefore not appropriate for the remedies they are seeking. See Perez v.Ellis, supra, Superior Court, Docket No. 552958.
Additionally, the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an CT Page 16713 action under CUTPA. Quimby v. Kimberly Clark Corp.,28 Conn. App. 660, 670-71, 613 A.2d 838 (1992) (affirming trial court's granting of motion to strike CUTPA claim on ground that dispute did not arise between consumer and commercial vendor, but rather between employer and employee), citing Banerjee v. Roberts,641 F. Sup. 1093, 1108 (D. Conn. 1986) (holding that employer-employee relationship itself does not fall within definition of trade or commerce for purposes of CUTPA action); see also Perez v. Ellis,
supra, Docket No. 552958.
Because the revised count one fails to plead facts sufficient to establish a prima facie CUTPA cause of action and asserts mere conclusions of law, the motion to strike is granted as to that count. See Novametrix Medical Systems, Inc. v. BOC Group, Inc.,
supra, 224 Conn. 215.
G. Trademark Claim (Count Four)
The plaintiffs argue that the defendants' use of the mark "NEATO" violates Connecticut trademark laws, General Statutes § 35-11a et seq., in that the mark is used to indicate a false source of the goods because the defendants are not the rightful owners of the patent. Even though the plaintiffs do not identify any specific sections of the Connecticut trademark laws, they have in essence claimed that the defendants violated §§35-11i (illegal use of mark) and 35-11j (fraudulent registration) and common law trademark laws.
The literal language of § 35-11i makes it clear that a plaintiff does not have standing to bring an action for illegal use of a trademark or service mark unless he has registered the mark in question. General Statutes § 35-11i ("any person who . . . uses in Connecticut, without the consent of theregistrant, any reproduction, counterfeit, copy or colorable imitation of a mark registered . . . shall be liable in a civil action by the registrant. . . .") (Emphasis added.)). "The term `registrant' embraces the person to whom the registration of a mark under this chapter is issued, and the legal representatives, successors or assigns of such person." General Statutes §35-11a(7). The plaintiffs do not allege, and nothing in the record indicates, that they are "registrants" of the mark "NEATO," and they therefore do not have standing to assert a statutory trademark claim.
Furthermore, the plaintiffs have no cause of action under CT Page 16714 common law trademark laws, even though their common law rights in the mark, if any, are not affected by their lack of standing under the trademark act. See General Statutes § 35-11k. "To prevail on a statutory or common law trademark infringement claim a plaintiff must demonstrate . . . that [the trademarks] are owned by [the] plaintiff. . . ." Pirone v. MacMillan, Inc.,894 F.2d 579, 581-82 (2d Cir. 1990). The substituted complaint still fails, as the court noted in its decision on original complaint, to allege that the plaintiffs are the owners or "registrants" of the "NEATO" mark, or that they have an exclusive right to use the patent. (See Memorandum of Decision Re Defendant's Motion to Strike #119, p. 16.) Thus, the substituted count four fails to cure the defect noted by the court and, as a result, still fails to state a common law trademark claim. (See id., pp. 16-17); see also Republic Oil Co., Inc. v. Levy, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 538757 (February 27, 1995, Corradino, J.) (13 Conn. L. Rptr. 530, 532) (granting motion to strike common law trademark infringement because of plaintiff's failure to allege it owns trademark or has exclusive right to distribute product).
The plaintiffs also assert a fraudulent registration claim, without specifying any statutory provisions, that the defendants knowingly made false statements in registering the "NEATO" mark. Such a claim, if well pleaded, is actionable under General Statutes § 35-11j, which provides, in relevant part, that "[a]ny person who . . . procures the filing or registration of any mark . . . by knowingly making any false or fraudulent representation or declaration . . . or by any other fraudulent means, shall be liable to pay all damages sustained in consequence of such filing or registration. . . ."
"Where a claim for damages is based upon fraud, the mere allegation that a fraud has been perpetrated is insufficient; the specific acts relied upon must be set forth in the complaint."Maruca v. Phillips, 139 Conn. 79, 81, 90 A.2d 159 (1952); see also Fleet Bank v. Dick Corp., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 392961 (October 22, 1991, Hennessey, J.) (6 C.S.C.R. 1045) (granting motion to strike fraudulent conveyance counterclaims due to failure to allege fraud with sufficient particularity).
In this case, the plaintiffs merely assert a conclusion of law in the added paragraph 35 that the defendants knowingly made false statements in registering the "NEATO" mark. The substituted CT Page 16715 count four still fails to cure the defect noted by the court in its previous decision to strike this count. As the court noted, "the plaintiffs have not made any factual allegations regarding particular false or fraudulent statements made by the defendants in the procurement of `NEATO' with the Secretary of State. Without some clear statement of the misstatements allegedly made to obtain the registration, the plaintiffs have not provided factual allegations sufficient to make a claim pursuant to §35-11j." (Memorandum of Decision Re Defendant's Motion to Strike #119, pp. 18-19.) Because the substituted count four asserts mere conclusions of law, the motion to strike this count is granted. See Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra,224 Conn. 215.
H. Antitrust Claim (Count Five)
The substituted count five adds conclusions of law to the original unspecified antitrust claim under the Connecticut Antitrust Act, General Statutes § 35-24 et. seq., alleging that the "contracts" assigning the patent rights to the defendants are an attempt to monopolize, and actual monopolization of, the use of the plaintiffs' product in trade and commerce. The defendants have failed again to specify any particular provisions of the Antitrust Act, but presumably their antitrust claim is brought under General Statutes § 35-27. This section is patterned after § 2 of the Sherman Act,15 U.S.C. § 2, and provides that "[e]very contract, combination, or conspiracy to monopolize, or attempt to monopolize, or monopolization of any part of trade or commerce is unlawful." General Statutes § 35-27; see Shea v. First Federal Savings Loan Assn. of New Haven, 184 Conn. 285, 304, 439 A.2d 997 (1981). "The Connecticut Anti-Trust Act . . . incorporates . . . various provisions of the federal antitrust laws, especially the Sherman Act. . . . Our construction of the Connecticut Anti-Trust Act is aided by reference to judicial opinions interpreting the federal antitrust statutes." Id., 303. Section 35-27 "enumerates three separate offenses: (1) contract, combination or conspiracy to monopolize, (2) monopolization, and (3) attempt to monopolize." (Internal quotation marks omitted.) Id., 304.
It should be noted that patents are generally not amenable to antitrust laws. "A patent by its very nature is affected with a public interest. . . . [It] is an exception to the general rule against monopolies and to the right to access to a free and open market. . . ." (Internal quotation marks omitted.) WalkerCT Page 16716Process Equip., Inc. v. Food Machinery, Chemical Corp.,382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).
The first offense, contract, combination or conspiracy to monopolize, "requires a plurality of actors." Shea v. FirstFederal Savings Loan Assn. of New Haven, supra, 184 Conn. 304. An individual or corporation cannot alone contract, combine or conspire to violate the antitrust laws. See, McKeownDistributors, Inc. v. Gyp-Crete Corp., 618 F. Sup. 632, 645 (D. Conn. 1985), citing Shea v. First Federal Savings and LoanAssociation of New Haven, supra, 184 Conn. 306. The substituted count five, like the original one, makes no specific allegations regarding which parties have supposedly contracted in an attempt to monopolize. The plaintiffs have admitted that they were among the parties who entered into "contracts" with Micropatent for the assignment of the patent rights, even though they claim that the contracts are ineffective due to lack of consideration.
Not every restraint of trade, however, is prohibited under the Sherman Act. Only those restraints that unreasonably restrain trade are prohibited. See Blaine v. Meineke Discount MufflerShops, Inc., 670 F. Sup. 1107, 1113 (D. Conn. 1987), citingStandard Oil Co. v. United States, 221 U.S. 1, 58, 31 S.Ct. 515,55 L.Ed.2d 619 (1911); National Society of Professional Engineersv. United States, 435 U.S. 679, 687, 690, 98 S.Ct. 1355,55 L.Ed.2d 637 (1978). The Sherman Act "directs itself not against conduct which is competitive, even severely so, but against competition which unfairly tends to destroy competition itself."Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458,113 S.Ct. 884, 122 L.Ed.2d 247 (1993).
The second offense, monopolization, "requires possession and willful acquisition or maintenance of monopoly power. . . . Monopoly power is power to fix or control prices or to exclude or control competition in the relevant market." (Citations omitted.)Shea v. First Federal Savings Loan Assn. of New Haven, supra,184 Conn. 304. Proof of the relevant product market is a necessary element of a cause of action for monopolization or attempted monopolization. See Spectrum Sports, Inc. v. McQuillan,
supra, 506 U.S. 457 ("it is beyond doubt that [a monopolization charge] requires proof of market power in a relevant market"), citing United States v. Grinnell Corp., 384 U.S. 563, 570-71,86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). The burden is on the plaintiffs to plead a relevant market. See Nifty Foods Corp. v.Great Atlantic Pacific Tea Co., 614 F.2d 832, 840 (2d Cir. CT Page 16717 1980). Defining a relevant market is a process of describing those groups of products which, because of the similarity of their products, have the ability to take significant amount of business away from each other. See Hayden Publishing Co., Inc. v.Cox Broadcasting Corp., 730 F.2d 64, 70 (2d Cir. 1984), citingUnited States v. E. I. du Pont de Nemours Co., 351 U.S. 377,393, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).
The third offense, attempt to monopolize, requires proof "(1) that the defendant has engaged in predatory or anti-competitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." SpectrumSports, Inc. v. McQuillan, supra, 506 U.S. 456; see also Shea v.First Federal Savings Loan Assn. of New Haven, supra,184 Conn. 304. Proof of the dangerous probability of monopolization requires proof of the defendant's economic power in a relevant market. Spectrum Sports, Inc. v. McQuillan, supra, 506 U.S. 459. A defendant "may not be liable for attempted monopolization under § 2 of the Sherman Act absent proof of a dangerous probability that it would monopolize a particular market and specific intent to monopolize." Id.
In addition, an antitrust claim must allege an "antitrust injury" because antitrust laws protect competition, not competitors. See Retail Service Associates v. ConAgra PetProducts Co., 759 F. Sup. 976, 979-80 (D. Conn. 1991) (dismissing Sherman Act § 1 claim for failure to allege "antitrust injury"), citing Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Mere allegations of loss of individual competitive ability are not sufficient; there must be some allegation of public injury to competition. See Retail Service Associates v. ConAgra PetProducts Co., supra, 759 F. Sup. 980.
In the present case, the plaintiffs have failed to make any of the requisite allegations in support of either a monopolization claim or an attempt-to-monopolize claim. First, the plaintiffs have failed to rectify the failure in the original complaint to define the relevant market that was allegedly harmed by the defendants' actions. (See Memorandum of Decision Re Defendant's Motion to Strike #119, pp. 24-25.) Specifically, the plaintiffs have failed again to allege what products are "reasonably interchangeable" with the product in question, and this failure, standing alone, is a valid ground for striking the antitrust claim. See B.V. Optische Industrie de Oude Delft v. Hologic,CT Page 16718Inc., 909 F. Sup. 162, 172 (S.D.N.Y. 1995) ("Plaintiff's failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal.") (Citations omitted)). Second, the plaintiffs have failed, once again, to allege in what way the defendants' actions have harmed competition. See Spectrum Sports, Inc. v. McQuillan,
supra, 506 U.S. 458. Third, the plaintiffs have failed to allege that they were competitors, or that they had taken substantial and demonstrable steps to become competitors, in the relevant market in which the defendants competed. A person with a mere hope of entering the market is not the type of person the antitrust laws were designed to protect. See Huron ValleyHospital, Inc. v. City of Pontiac, 666 F.2d 1029, 1033 (6th Cir. 1981).
Because the substituted count five has failed once again to allege the requisite elements of an antitrust claim, the motion to strike it is granted.
In summary, because the substituted complaint has failed to cure the defects noted by the court in its decision to grant the previous motion to strike counts one, four and five, the present motion to strike the same counts as revised is also granted.
Jonathan E. Silbert, Judge