[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the court is the defendant's motion for summary judgment on the plaintiff's complaint. For the reasons stated herein, the motion is hereby granted as to the individual defendants and denied as to the defendant State of Connecticut Board of Trustees of Community Colleges.
 I BACKGROUND
On September 2, 1999, the plaintiff, Ted Hargrove, filed a single count complaint against the defendants, State of Connecticut Board of Trustees of Community Colleges, Dan Oliveira, Joe Cutrali and Richard Faucher. The complaint states a claim for employment discrimination on the basis of race in violation of General Statutes § 46a-60 et seq. The plaintiff, an African-American male, who was employed as a boiler tender in the maintenance department at Naugatuck Valley Community-Technical College (the college), claims that the defendants discriminated against him on the basis of his race on account of their failure to hire him for the posted position of Qualified Craft Worker in Plumbing and Steamfitting (the position) in the maintenance department at the college. The plaintiff alleges that he filed a timely application for the position and was interviewed by the defendants, Oliveira, Cutrali and Faucher. The plaintiff further alleges that despite the fact that he was qualified for the position, he was denied the position which was offered to a Caucasian male from outside the maintenance department. The plaintiff further alleges the court has jurisdiction over the matter pursuant to a release of jurisdiction issued by the Commission on Human Rights and Opportunities.
On October 15, 1999, the defendants filed an answer to the complaint and two special defenses. In their first special defense, the defendants alleged that the plaintiff was not qualified for the posted position for which he applied, and in their second special defense, the defendants allege that the individual defendants, Oliveira, Cutrali and Faucher, are not proper defendants in this action. CT Page 6130
On March 15, 2002, the defendants filed a motion for summary judgment accompanied by a memorandum of law and thirty-three numbered exhibits in support thereof. On April 19, 2002, the plaintiff filed a memorandum of law in opposition, accompanied by Exhibit A, consisting of portions of his deposition testimony of February 28, 2002. On April 24, 2002, the defendants filed a reply to the plaintiff's memorandum in opposition.
 II STANDARD OF REVIEW
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted; citation omitted.) Miles v. Foley, 253 Conn. 381,385, 386, 752 A.2d 503 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted). Witt v. St. Vincent's Medical Center, 252 Conn. 363,368, 746 A.2d 753 (2000).
"[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to thenonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted; emphasis in original; internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 752, 660 A.2d 810 (1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031
(1988). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co.,44 Conn. App. 657, 663, 691 A.2d 1107 (1997).
While "the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the CT Page 6131 existence of such an issue." Haesche v. Kissner, 229 Conn. 213, 217,640 A.2d 89 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted). Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552,554-55, 707 A.2d 15 (1998). Summary judgment procedure would be defeated as a whole if the mere assertion that a factual dispute existed could force a case to trial. See Great Country Bank v. Pastore, 241 Conn. 423,436, 696 A.2d 1254 (1997).
 III DISCUSSION
The defendants argue that their motion for summary judgment should be granted because of the plaintiff's failure to state a cause of action for employment discrimination through failure to promote on account of race and because of failure to state a cause of action against the individual defendants.
 I Statement of Claim against Individual Defendants
The recent Connecticut Supreme Court decision, Perodeau v. Hartford,259 Conn. 729 ___ A.2d ___ (2002) is controlling as to the liability of the individual defendants. Oliveira. Cutrali and Faucher, under General Statutes § 46a-60 (a)(1).[1] As the court in that case held "that § 46a-60 . . . (a)(1) does not impose liability on individual employees," Id., 744, the defendants' motion for summary judgment is hereby granted as to the liability of the individual defendants named herein.
 II Establishment of Prima Facie Case
"At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of the employer. A court is to examine the entire record to determine whether the plaintiff could satisfy his ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. A motion for summary judgment may be CT Page 6132 defeated where a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification [for not hiring] is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. (Internal citations omitted; internal quotation marks omitted.) Byrnie v. Town of Cromwell Board of Education,243 F.3d 93, 102 (2d Cir. 2001).
In their memorandum of law, the defendants have set forth the procedural steps required for the plaintiff to establish a prima facie case of employment discrimination under General Statutes § 46a-60
sufficient to survive initially a motion for summary judgment. The four factors which the plaintiff must initially establish by a preponderance of the evidence are: "membership in a protected class, qualification for the position, an adverse employment action. and the ultimate filling of the position by a person not of the protected class." Scaria v. Rubin,117 F.3d 652, 653 (2d Cir. 1997). The defendants contend that the plaintiff has failed to establish the second factor; i.e., that he was qualified for the position, and further, even if he had been able to establish his qualifications for the position so as to raise a presumption of discrimination, nonetheless, the burden of going forward would once again shift back to the plaintiff under the burden-shifting framework established by the United States Supreme Court in McDonnellDouglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 668
(1973), because the defendants are able to meet their temporary burden by offering a legitimate, non-discriminatory reason for the employment decision. Specifically, the defendants argue that the successful candidate for the position possessed superior employment and training qualifications, licenses in plumbing and heating and a superior interview performance than the plaintiff.
At this point, the defendants argue, in order to survive the motion for summary judgment, the plaintiff has the burden of putting forth adequate evidence that the nondiscriminatory reasons proffered by the employer for its hiring decision were false. Viola v. Philips Medical Systems of NorthAmerica, 42 F.3d 712, 717 (2d Cir. 1994). Stated another way, the plaintiff must raise a triable issue of fact as to whether the defendants' offered explanation for its hiring decision is pretextual to overcome summary judgment. Holt v. KMI-Continental, Inc., 95 F.3d 123, 132 (2d Cir. 1996). Here, "the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [his] burden of persuading the factfinder that [he] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal citation omitted; internal quotation marks omitted.) Ford v. Blue Cross Blue Shield of Connecticut, Inc., 216 Conn. 40, 54, 578 A.2d 1054
CT Page 6133 (1990). Although the defendants have painstakingly traced the course of the shifting burden of production, they maintain, nonetheless, that the plaintiff has failed in the first instance to put forth a prima facie case establishing the initial presumption of discrimination because there is no issue of fact regarding his lack of qualifications for the position.
The plaintiff argues in opposition that he was qualified for the position on account of his plumbing experience both at his current place of employment, the college, and also because of his plumbing experience through a prior employer, which earlier experience he made known to the defendant, Oliveira, at the time of his hire at the college. "Evidence indicating that an employer misjudged an employee's performance qualifications is . . . relevant to the question whether its stated reason is a pretext masking prohibited discrimination . . .; if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." Fishbach v. D.C. Dept. of Corrections,86 F.3d 1180, 1183 (D.C. 1996).
The defendants' exhibit 15, an applicant flow chart for the candidate review process, lists the plaintiff as one of seventeen applicants meeting the minimum qualifications for the position and one of eleven candidates interviewed for the position. of the nineteen candidate/applicants, seven were not interviewed. By contrast, defendants' exhibit 10, the October 3, 2001 deposition testimony of the defendant Oliveira, contains the following testimony at page 15: "I think we interviewed everybody that applied for that position," following his testimony that the plaintiff was given a "courtesy" interview to give him "an opportunity to bring forth his experience." The recollection of the defendant Cutrali differs as to the number of candidates interviewed for the position. His deposition testimony is consistent that some, and not all, of the candidates were interviewed. (See Defendant's Exhibit 11, p. 18.)
The evidence demonstrates that the candidates interviewed for the position were asked to respond to ten prepared questions from the five interviewers, which group included the three individually named defendants. of these ten questions, only four were specifically addressed to the applicant's knowledge of plumbing and steamfitting. (See Defendants' Exhibits 12 and 31.) Exhibit 12 clearly indicates that the plaintiff informed the interviewers of his experience repairing steam lines and traps, his experience with high temperature hot water systems and power pipe benders, power snakes and steel pipe threaders. By contrast, the successful candidate for the position acknowledged at his interview his lack of experience with high temperature hot water systems, and, although that candidate was able to respond correctly that 95-5 is the type of solder used for sweating joints in a domestic water CT Page 6134 system (See Defendants' Exhibit 31.), there is evidence that the plaintiff also gave the correct response to the solder question after some hesitancy. (See Defendants' Exhibit 12, p. 2, question 2.) The defendants maintain that the plaintiff's failure to answer correctly the solder question is wholly indicative of his lack of basic plumbing knowledge, even though he correctly answered other plumbing-specific questions, including one in which the successful candidate admittedly lacked experience. The defendants expressed no concern, however, over the failure of the successful candidate to demonstrate experience with high temperature hot water systems. (See Defendants' Exhibits 24 and 25.)
The remainder of the defendants' exhibits, together with the plaintiff's exhibit A raise, time and again, the issue of whether the plaintiff met the qualifications for the position, one of the four factors essential to establish a prima facie case of discrimination.
The step 1 union grievance procedure answer, dated September 9, 1998 (Defendants' Exhibit 23), states, in part, that "Mr. Hargrove does not meet the requirements for Qualified Craft Worker. . . .", although he is described as meeting the minimum qualifications on the applicant flow chart (Defendants' Exhibit 15.)
The deposition testimony of the defendant Cutrali is inconsistent as to whether he had assigned plumbing jobs to the plaintiff during the course of the plaintiff's employment as a boiler tender at the college. (See Defendants' Exhibit 11, p. 16.), yet a memorandum from Kelly A. Masi, affirmative action officer, to Dr. Richard L. Sanders, president of the college, states, in part: "Since June 1997 Mr. Hargrove states that he has continued to perform plumbing duties. Mr. Cutrali stated that Mr. Hargrove no longer performs plumbing duties and only does jobs as part of his regular job duties which would include the maintenance aspects of plumbing." (See Defendants' Exhibit 25.)
The Masi memorandum states further that "[t]he committee stated that Mr. Hargrove had an `attitude as soon as he walked in for the interview,' `was unable to answer a simple soldering question' and responded to questions as `yes, I've done that.'" (See Defendants' Exhibit 25.) In contrast to the allegations of the interviewers in the Masi memorandum, there is no notation of the plaintiff's "attitude" at his interview either on the finalist selection form (Defendants' Exhibit 9) nor on the interview questions and responses sheets (Defendants' Exhibit 12) nor on the applicant flow chart (Exhibit 15) nor on the finalist selection form (Exhibit 18), although, on each of the above forms other than the interview questions and responses sheets there is a notation with respect to another candidate for the position that his "response to the questioning was curt." CT Page 6135
Both the plaintiff and the defendants have submitted portions of the plaintiff's sworn deposition testimony of February 28, 2002, on the issue of the plaintiff's qualification for the position. (See Plaintiff's Exhibit A and Defendants' Exhibit 33.) At the deposition the plaintiff testified that he had engaged in a variety of plumbing tasks for a previous employer, including the installation of steam traps, steam lines and water fountains. (See Defendants' Exhibit 33, p. 20.) There is further testimony from the plaintiff as to the plumbing duties which he performed in his current position: "repairing and replacing radiator units in Kinney Hall" (Exhibit 33, p. 29), pipe cutting and soldering HVAC units (pp. 30-31), fulfilling numerous plumbing orders from defendant Cutrali (p. 42), replacing radiators, HVAC units, chill water valves and thermostats at Kinney Hall (p. 47), installing air compressors (p. 48), reading blueprints at the request of an outside plumber to locate a shut-off valve (p. 49) and installation of a main water meter.
On the basis of the evidence submitted by the parties, the court is of the opinion that there are two genuine issues of material fact to be decided in this matter. The first is whether the plaintiff is qualified for the position of Qualified Craft Worker, the answer to which will determine whether he has established a prima facie case of employment discrimination. The second issue of fact is whether the reason for the defendants' employment decision in denying the position to the plaintiff is pretextual. Accordingly, the defendants' motion for summary judgment is denied as to the defendant State of Connecticut Board of Trustees of Community Colleges.
So ordered. May 7, 2002.
BY THE COURT
PETER EMMETT WIESE, JUDGE