**SMITH–SCHARFF PAPER COMPANY, Plaintiff–Respondent,**

v.

**P.N. HIRSCH & CO. STORES, INC. and Interco Incorporated, Defendants–Appellants.**

No. 53675.

Missouri Court of Appeals, Eastern District. Division Two.

Aug. 9, 1988.

Lynn Chipperfield, Clayton, for defendants-appellants.

Thomas M. Utterback, Washington, for plaintiff-respondent.

STEPHAN, Presiding Judge.

This is an appeal from a jury tried case in the circuit court of St. Louis County. Plaintiff, Smith–Scharff Paper Company ("Smith–Scharff") filed suit alleging breach of contract. Defendant, P.N. Hirsch & Co. Stores, Inc. ("P.N. Hirsch") denied the existence of such a contract, but, asserted that if there were a contract, Smith–Scharff breached first. The jury found for Smith–Scharff and awarded damages. P.N. Hirsch appeals; we affirm.

Smith–Scharff is a Missouri corporation, engaged in business as a distributor of paper products. At all relevant times herein after 1964, P.N. Hirsch was a division of INTERCO INCORPORATED, a Delaware corporation. Prior to 1964, P.N. Hirsch was a privately held company.

Smith–Scharff began selling paper products to P.N. Hirsch in 1947. Their business relationship was very nearly continuous until 1983, except for a one year interruption sometime in the 1950's or 1960's. During this one year period, P.N. Hirsch bought its paper bags from another company. At the time this interruption occurred, P.N. Hirsch bought all the bags with the P.N. Hirsch logo that Smith–Scharff had in its possession.

The paper bags that Smith–Scharff sold to P.N. Hirsch were imprinted by the manufacturer with the P.N. Hirsch logo. Smith–Scharff kept a supply of these bags in stock so that, when a purchase order was received from P.N. Hirsch, Smith–Scharff could fill it in a timely fashion. Smith–Scharff ordered these bags from the manufacturer based on its own historical sales record to P.N. Hirsch. P.N. Hirsch was aware of this arrangement and would provide a generalized profile of its business forecasts to Smith–Scharff.

P.N. Hirsch was liquidated and its retail outlets sold to Dollar General. When Smith–Scharff discovered this, its president, Arthur L. Scharff, wrote a letter to

the president of P.N. Hirsch, Bernard Mayer. Subsequently, Mr. Scharff spoke with Mr. Mayer. Smith–Scharff was looking for assurance that the P.N. Hirsch bags they had in stock would be bought. Mayer told Scharff that P.N. Hirsch would honor all commitments, and, that the integrity of P.N. Hirsch should not be questioned.

Thereafter, Smith–Scharff sent P.N. Hirsch a bill for $65,000, representing the amount of all the P.N. Hirsch bags in stock. Between October 1983 and May 1984, P.N. Hirsch purchased approximately $45,000 worth of these bags. Smith–Scharff was left with an inventory totaling $20,679.46.

The jury found for Smith–Scharff and awarded damages of $27,000 (the inventory plus interest). P.N. Hirsch filed a motion for a new trial, which was denied, and this appeal followed.

P.N. Hirsch raises two points on appeal. They are: 1) The trial court erred in failing to direct a verdict for P.N. Hirsch because there was no evidence of an agreement between the parties regarding disposition of inventory upon termination; and, 2) The trial court erred in failing to direct a verdict for P.N. Hirsch because Smith–Scharff breached the agreement first.

■ P.N. Hirsch argues that a written agreement was necessary under the Statute of Frauds, § 400.2–201, RSMo 1978. We disagree. The goods herein are specially made and are generally not suitable for sale to others in the ordinary course of business. These goods, therefore, come within an exception to the statute, § 400.2–201(3)(a), RSMo 1978.

■ This means that an implied contract can be found even though it was not reduced to writing. In order to find such an agreement, we must look to the parties' "bargain ... in fact as found in their language or by implication from other circumstances including course of dealing ..." § 400.1–201(3), RSMo 1978. Course of dealing is defined as:

... a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as

establishing a common basis of understanding for interpreting their expressions and other conduct. § 400.1–205(1).

■ After reviewing the record, we find that there was sufficient evidence to support the existence of a contract. Smith–Scharff and P.N. Hirsch had been engaged in business together for thirty-six years. In that time, Smith–Scharff discovered that the best way to service P.N. Hirsch and stay competitive in the market was to keep a supply of bags with the P.N. Hirsch logo in stock. P.N. Hirsch was aware of the way its account was handled by Smith–Scharff. While it is true that P.N. Hirsch did not specifically request Smith–Scharff to conduct business in this fashion, P.N. Hirsch accepted the benefits of the practice which avoided the delays involved in ordering the bags from the manufacturer. P.N. Hirsch could have told Smith–Scharff to stop stockpiling bags, but, chose not to because the situation, as it stood, suited its business purposes. Under the Uniform Commercial Code, P.N. Hirsch is under an obligation of good faith. § 400.1–203, RSMo 1978. It is, therefore, estopped from denying the existence of a contract.

■ Having found that there was an agreement, we now look to whether it included disposition of merchandise upon termination of the relation. This contingency was never discussed by the parties, but there was a previous termination of relations which lasted approximately one year. At that time, P.N. Hirsch bought the remaining bags left in the possession of Smith–Scharff. It was, therefore, not unreasonable for Smith–Scharff to expect the same treatment again. It makes no difference that this time the termination was permanent because P.N. Hirsch was going out of business under that name.

It is clear that the bags were made specially for the benefit of P.N. Hirsch. P.N. Hirsch was aware of Smith–Scharff's business practice of pre-ordering bags, therefore, Hirsch is estopped from denying its responsibility to pay for them. It was reasonable for Smith–Scharff to expect P.N. Hirsch to purchase the remaining invento-

ry. We, therefore, deny Point I on all grounds.

In P.N. Hirsch's second point, it claims that Smith–Scharff breached the agreement first; therefore, P.N. Hirsch was relieved of further performance.

When Arthur L. Scharff, president of Smith–Scharff, read a newspaper article to the effect that P.N. Hirsch was being sold, he sent a letter to Hirsch's president, Bernard Mayer, informing him of the amount of P.N. Hirsch inventory Smith–Scharff then held in stock. This letter was followed up with a phone call and then a billing statement for $65,000. P.N. Hirsch maintains these facts constitute anticipatory repudiation. We disagree.

The fact that P.N. Hirsch was going out of business gave Smith–Scharff reasonable grounds for insecurity and a right to demand adequate assurance of performance under § 400.2–609(1), RSMo 1978, which provides:

> (1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

When Mr. Mayer failed to respond to the letter, Mr. Scharff called him on the telephone. Mr. Scharff testified with respect to the call as follows:

> I remember him *yelling at me over the telephone*, that I would have the audacity to question the integrity of their company, that they would honor all commitments, and, historically, they have bent over backwards to honor all of their commitments. (emphasis supplied)

This was an unreasonable response to a simple request for assurance. Smith–Scharff was, therefore, justified in sending the billing statement. Moreover, once the statement was sent, immediate payment

was not made. The parties continued their business relationship for another five months. We hold that Smith–Scharff did not act unreasonably, nor did it breach the contract.

The judgment of the trial court is affirmed.

DOWD and PUDLOWSKI, JJ., concur.