JOHN PENDER ET AL. *v.* JOSEPH MATRANGA ET AL.
(AC 19049)

O'Connell, C. J., and Lavery and Hennessy, Js.[1]

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 13—officially released May 30, 2000

*Michael J. Mannion,* for the appellants (named plaintiff et al.).

*Monte E. Frank,* with whom, on the brief, was *Neil R. Marcus,* for the appellees (defendants).

*Opinion*

LAVERY, J. The plaintiffs John Pender and Mary Pender[2] appeal from the trial court's judgment

---

[2] The plaintiffs at trial were John Pender, Mary Pender, Nancy P. Simmons and Dorothy Kemp. Only John Pender and Mary Pender have appealed. We therefore refer in this opinion to John Pender and Mary Pender as the plaintiffs.

determining that the defendants Joseph Matranga and Christina Matranga[3] have certain easements across the property of the plaintiffs. The plaintiffs contend that the court improperly (1) found that various easements exist and (2) refused to admit certain testimony under a statutory exception to the hearsay rule. We affirm that portion of the judgment ruling that a fourteen foot express easement exists across the property of the plaintiffs and reverse that portion finding that a twelve foot easement of necessity and an eight foot easement by implication exist across the property.

The trial court found the following facts. The plaintiffs own certain lots on the west shore of Candlewood Lake in New Fairfield. The Matrangas own a ten acre undeveloped parcel that abuts the plaintiffs' smaller lots and overlooks Candlewood Lake. The boundaries of the parties' parcels are stated on a property map, titled, "MAP SHOWING SUBDIVISION OF PROPERTY OF BURTON F. SHERWOOD LOCATED ON THE WEST SHORE OF LAKE CANDLEWOOD IN THE TOWN OF NEW FAIRFIELD, FAIRFIELD COUNTY CONNECTICUT." (Rapp map). The Rapp map was prepared and certified as being substantially correct by Sydney Rapp, and was recorded in the New Fairfield land records on December 7, 1953.

Both the plaintiffs and the Matrangas trace title to a common grantor, Burton F. Sherwood, who was a seasoned real estate developer in the area. On October 23, 1944, Sherwood and a group of landowners known as the Kellogg Point residents signed an agreement. The agreement gave those residents access to a nearby thoroughfare through a "private road" across Sher-

---

[3] The defendants are Joseph Matranga, Christina Matranga and Chris Wallace. The Matrangas own real property that the trial court found was benefited by easements over the plaintiffs' property. Wallace was in the process of constructing a twelve foot wide roadway for the Matrangas on the plaintiffs' property at the time the plaintiffs brought this injunction action.

wood's land. The agreement gave Sherwood "the right to pass and repass for all purposes whatsoever over the existing roadway 14 feet in width from a point marking the common bound of land of the Estate of Stanley T. Kellogg, land formerly of Rosalind D. Martel, now of said Sherwood, and the 440 foot contour line of The Connecticut Light & Power Company's Rocky River Datum, over and across land of the Kellogg Point Residents to a point of land of Louise F. Taylor, and thence in a Northerly direction in a course marked by iron pipes to other land of said Sherwood at a point approximately 100 feet Southerly of land of Neil G. Hayes." The defendant Chris Wallace constructed a road on behalf of the Matrangas, which bisects the property owned by the plaintiffs, following the "wood road" as noted on the Rapp map. The plaintiffs brought an action seeking to enjoin the defendants from using or improving this wood road, which runs through the rear of the plaintiffs' property and provides access to the Matrangas' lot. The Matrangas wanted to construct a dwelling on their property. The plaintiffs have admitted that the Matrangas have "the right to pass and repass over a right-of-way traversing [the plaintiffs'] . . . property," but challenge the width of the right-of-way and whether the Matrangas have a right to construct, maintain or use the road on the right-of-way located on the plaintiffs' property.

David Ryan, a licensed land surveyor, was called by the defendants to testify at trial as an expert witness. He explained the meaning of double dotted lines that signify the presence of the wood road on the Rapp map. Ryan stated that the double dotted lines on the Rapp map signify a traveled way or road, while a single dotted line indicates a path. Ryan noted that in 1991 he observed the wood road to be between seven feet and ten feet wide, but that the double dotted lines scale to eight feet wide on the Rapp map.

Ryan also examined the agreement with the Kellogg Point residents and compared that agreement with the Rapp map. While performing field work, Ryan located an iron pipe where the wood road begins a generally northerly path toward the Matrangas' lot. Ryan concluded that the road referred to in the Rapp map creating the right-of-way is the same wood road that passes over the property of the plaintiffs.

The court found that a fourteen foot express easement, a twelve foot easement of necessity and an eight foot easement by implication existed over the plaintiffs' property in favor of the Matrangas. The court further found that the Matrangas may maintain, construct and repair those easements when necessary.

I

The plaintiffs first contend that the court improperly found that the Matrangas hold certain easements over the subject property. We agree with the trial court that there is an express easement of fourteen feet in width.

The determination of the scope of an easement is a question of fact. *Strollo* v. *Iannantuoni*, 53 Conn. App. 658, 659, 734 A.2d 144, cert. denied, 250 Conn. 924, 738 A.2d 662 (1999). The court's factual findings are "binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Food Studio, Inc.* v. *Fabiola's*, 56 Conn. App. 858, 862, 747 A.2d 7 (2000); see *Powers* v. *Olson*, 252 Conn. 98, 104–105, 742 A.2d 799 (2000). The plaintiffs have admitted that an express easement

exists in favor of the Matrangas over the plaintiffs' land. The issue remaining in dispute is the width of that express easement and the presence of any nonexpress easements.

A

The court concluded that a fourteen foot easement exists over the plaintiffs' land pursuant to the October, 1944 agreement. The court reasoned in part: "Here, we are presented with a general grant of authority to pass and repass 'for all purposes whatsoever.' . . . [The Matrangas' land] is almost inaccessible by any other means, and contains ten acres overlooking Candlewood Lake. The testimony of both David Ryan and Christina Matranga affirmed that a steep grade renders access . . . unfeasible. Since the actual road was approximately eight feet in width in 1952, according to reliable testimony, one must conclude that either Burton F. Sherwood had the foresight to reserve fourteen feet as an easement in the event access to this ten acre parcel was necessary for development or he grossly miscalculated the width of the existing road by a full six feet prior to signing the agreement with the Kellogg Point residents." The court concluded that the plaintiffs' deed to the property and the mortgage instrument executed on the property referenced the easement. The court concluded that the plaintiffs took title to their property subject to the agreement between Sherwood and the Kellogg Point residents. We agree.

The phrase "for all purposes whatsoever" is a broad one, without any restrictions as to the use of the right to pass or repass. See *Birdsey* v. *Kosienski*, 140 Conn. 403, 412–13, 101 A.2d 274 (1953); *Lichteig* v. *Churinetz*, 9 Conn. App. 406, 410, 519 A.2d 99 (1986). The phrase permits any use reasonably connected to the reasonable use of the land. *Lichteig* v. *Churinetz*, supra, 410.

The agreement uses the phrase "over the existing roadway 14 feet in width," even though no testimony indicated that the wood road actually was fourteen feet at any recorded time. This indicates the intention to develop the parcel at a later time and to reserve sufficient width in the travel spaces for the development to occur. As the defendants rightly note in their brief, it is very unlikely that Sherwood, an experienced real estate developer, would intentionally fail to provide access to ten acres overlooking Candlewood Lake and render them essentially useless for development. See *Kelly* v. *Ivler*, 187 Conn. 31, 39, 450 A.2d 817 (1982) (effect of deed considered in light of surrounding circumstances).

We also look to the intent of the parties when interpreting the meaning of the easement. *Birdsey* v. *Kosienski*, supra, 140 Conn. 410. The intention of the parties, as shown by the language of the 1944 agreement, further supports the court's conclusion. The "whereas" clauses in the agreement, as set forth by the parties, reveal that "the Kellogg Point Residents desire to have free access from their land to the public highway," "Sherwood owns other land . . . to which access is difficult without passing through land of the Kellogg Point Residents" and "the parties hereto feel that it would be mutually beneficial to exchange rights of way." In essence, the Kellogg Point residents received access to a nearby highway in exchange for Sherwood's gaining access to his property over the wood road. The fact that a fourteen foot easement over the plaintiffs' land has significant value to the dominant tenement is a relevant factor in determining the easement's scope. See id., 410–11.

"A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 357, 727 A.2d 1260 (1999). The plain meaning of the easement grants an

express right-of-way of fourteen feet over a specified route, which includes the plaintiffs' property. The court so found, and we conclude that sufficient evidence exists in the record to support this conclusion.[4]

## B

Since we agree with the trial court that an express easement exists over the subject property, any implied easements or easements of necessity that may have existed over the same right-of-way are extinguished. An easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel. *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 398–99, 324 A.2d 247 (1973); *Collins* v. *Prentice*, 15 Conn. 39, 43–44 (1842); see *Friedman* v. *Westport*, 50 Conn. App. 209, 214, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). The inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means. See R. Powell & P. Rohan, Powell on Real Property (1999) § 34.07, p. 34-67 n.29, citing *Parham* v. *Reddick*, 537 So. 2d 132, 135 (Fla. Dist. Ct. App. 1988) (right-of-way based on necessity expires when owner of dominant estate acquires adjoining lands that provide access to public or private road).

Similarly, an easement by implication does not arise by mere convenience or economy, but exists because

---

[4] The plaintiffs contend that a decision in a prior case resolving the width of the wood road on an adjacent plot of land that the wood road crosses bars redetermination of the width of the easement in this case. See *McEachern* v. *Matranga*, Superior Court, judicial district of Danbury, Docket No. 0319038 (August 15, 1997). As this question of issue preclusion was not raised before the trial court, we will not consider it on appeal. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 48, 717 A.2d 77 (1998).

of some significant or unreasonable burden as to access that demands the easement's presence. "In this state, the law regarding easements by implication arising out of the severance of title of two adjoining or commonly owned properties is well settled. Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another, which at the time of the severance is in use, and is reasonably necessary for the fair enjoyment of the other, then, upon a severance of such ownership . . . there arises by implication of law a . . . reservation of the right to continue such use. . . . [I]n so far as necessity is significant it is sufficient if the easement is highly convenient and beneficial for the enjoyment of the dominant estate." (Internal quotation marks omitted.) *Schultz* v. *Barker*, 15 Conn. App. 696, 700–701, 546 A.2d 324 (1988).

Here, the Matrangas possess an express easement of fourteen feet in width by which to access and develop the parcel. No reason exists to retain an implied easement or easement of necessity over the exact same tract of land. We therefore conclude that because the fourteen foot express easement exists along the wood road in the Rapp map, no implied easement or easement of necessity can be found.

II

The plaintiffs next contend that the court improperly refused to admit testimony about the 1944 agreement under the exception to the hearsay rule embodied in General Statutes § 52-172, which is commonly known as the dead man's statute. We disagree.

" 'The standard to be used to review a trial court's decision on the relevance and admissibility of evidence is abuse of discretion.' *State* v. *Lindstrom*, 46 Conn. App. 810, 818, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997). 'The trial court has wide discretion

to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion.' " *State* v. *Markeveys*, 56 Conn. App. 716, 718–19, 745 A.2d 212, cert. denied, 252 Conn. 953, 749 A.2d 1203 (2000).

Nancy Simmons,[5] a plaintiff at trial, inherited property from her mother, Louise Taylor, one of the signatories to the Kellogg Point residents agreement. Simmons was asked at trial whether she recalled her late mother telling her about the reasons and purposes of the Kellogg Point residents' agreement. The defendants objected on the ground that this testimony was inadmissible under the rule against hearsay. The plaintiffs argued that her testimony fell within the statutory exception outlined by § 52-172. The court disagreed and sustained the objection.

"The dead man's statute creates an exception to the hearsay rule. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) §§ 11.1–11.25. Its purpose is to create an equal footing between the living and the dead parties." *Rosales* v. *Lupien*, 50 Conn. App. 405, 407–408, 717 A.2d 821 (1998). Although it is to be interpreted liberally, "every utterance of a deceased person is not automatically entitled to come into evidence solely because the speaker has died. This is particularly true where its admission would violate another well established rule of evidence." Id., 408.

The dead man's statute requires not only that the declarant be a representative of a decedent, but that the action be by or against a representative of the deceased person. *O'Brien* v. *Coburn*, 46 Conn. App. 620, 632, 700 A.2d 81, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997).

---

[5] As noted earlier, neither Nancy Simmons nor Dorothy Kemp, who is Nancy Simmons' sister, is a party to this appeal.

In other words, "the representative must sue or be sued in that representative capacity." C. Tait & J. LaPlante, supra, § 11.8.4, p. 358; see *Lockwood* v. *Lockwood*, 56 Conn. 106, 108–109, 14 A. 293 (1887). Simmons did not bring this action as an official representative of her deceased mother and her testimony, therefore, does not fall within the bounds of the dead man's statute.

The judgment is reversed only as to the trial court's findings that the defendants have a twelve foot easement of necessity and an eight foot easement by implication over the plaintiffs' property and the case is remanded with direction to vacate those findings. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.