BARBARA H. KALAS *v.* EDWARD W.
COOK, EXECUTOR (ESTATE OF
ADELMA G. SIMMONS)
(AC 21439)

Schaller, Flynn and Peters, Js.

Argued April 1—officially released June 18, 2002

*Linda C. Lehmann*, with whom were *Malcolm F. Barlow* and, on the brief, *Edward W. Cook*, for the appellant (defendant).

*Atherton B. Ryan*, for the appellee (plaintiff).

*Opinion*

PETERS, J. Pursuant to a long-standing oral agreement, a print shop manufactured and delivered written materials designed by the buyer for the buyer's use and sale. After the buyer's death, the executor of her estate refused to pay for the last deliveries of these materials to the buyer. The principal issue in this appeal is whether the statute of frauds, as codified in the Uniform Commercial Code, General Statutes § 42a-1-101 et seq., bars enforcement of the oral agreement. Although our conclusion rests on statutory grounds that were not cited to the trial court, we agree with the court's conclusion that, under the circumstances of this case, the seller is entitled to be paid.

The plaintiff, Barbara H. Kalas, owner of the print shop, filed a complaint against the defendant, Edward W. Cook, executor of the estate of the buyer, Adelma G. Simmons. The plaintiff alleged that the defendant, in breach of the obligations contained in an oral contract with Simmons for the sale of goods, had refused to pay for goods delivered to her. The defendant denied

these allegations and interposed a number of special defenses,[1] including a defense under the statute of frauds as codified in General Statutes § 42a-1-206.[2]

The trial court held that the transaction between the plaintiff and the deceased was a sale of goods as that term is defined in General Statutes § 42a-2-105.[3] That determination has not been challenged on appeal. As a contract for the sale of goods, its enforcement was not precluded by the statute of frauds provision contained in § 42a-1-206. Accordingly, the court rendered a judgment in favor of the plaintiff in the amount of $24,599.38. The defendant has appealed.

The facts found by the trial court, which are currently uncontested, establish the background for the court's judgment. The plaintiff, doing business as Clinton Press of Tolland, operated a printing press and, for several decades, provided written materials, including books and pamphlets for Simmons. Simmons ordered these materials for use and sale at her farm, known as Capri-

[1] The defendant asserted the following special defenses: (1) the complaint was filed beyond the three year statute of limitations in violation of General Statutes § 52-581; (2) the complaint was filed beyond the six year statute of limitations in violation of General Statutes § 52-576; (3) Simmons had paid for all materials that she ordered or expected in 1997; (4) the complaint was filed beyond the four year statute of limitations in violation of General Statutes § 42a-2-725; and (5) there was no written agreement in violation of the statute of frauds in § 42a-1-206.

[2] General Statutes § 42a-1-206 provides in relevant part: "(1) Except in the cases described in subsection (2) of this section a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties . . . .

"(2) Subsection (1) of this section does not apply to contracts for sale of goods nor of securities nor to security agreements."

[3] General Statutes § 42a-2-105 provides in relevant part: "(1) 'Goods' means all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities covered by article 8 and things in action. . . ."

lands Herb Farm (Caprilands). The defendant has not suggested that these materials could have been sold on the open market.

Due to limited space at Caprilands, the plaintiff and Simmons agreed that the written materials would remain stored at the plaintiff's print shop until Simmons decided that delivery was necessary. The materials were delivered either routinely, based on Simmons' ordinary need for materials, or upon her request for a special delivery. After each delivery, the plaintiff sent an invoice requesting payment by Simmons. These invoices were honored.

In 1991, the town of Tolland acquired the land on which the plaintiff resided. In early 1997, the plaintiff was notified that she would have to vacate the property by the end of that calendar year. Upon receiving that notice, the plaintiff decided to close her business. The plaintiff and Simmons agreed that the materials printed for Caprilands and stored at the plaintiff's print shop would be delivered on an accelerated basis. Simmons directed an employee, Jack Lee, to begin to transport the stored materials to Caprilands and he made occasional trips to the print shop to do so. The plaintiff routinely delivered printed materials to Caprilands whenever she visited there.

On December 3, 1997, after several months of deterioration of her physical health, Simmons died. Simmons' will was admitted to probate, and the defendant was appointed executor of her estate. The plaintiff submitted a claim against the estate for $24,599.38 for unpaid deliveries to Caprilands. These deliveries took place from February 12, 1997 to December 11, 1997, with the last two deliveries occurring after Simmons' death.

In his appeal, the defendant raised fifteen claims for reversal. None of these claims was adequately briefed. See *Pestey* v. *Cushman*, 259 Conn. 345, 373, 788 A.2d

496 (2002). "We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citations omitted; internal quotation marks omitted.) *Strobel* v. *Strobel*, 64 Conn. App. 614, 623, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001). We could, therefore, affirm the judgment on that ground. At oral argument, however, the defendant elaborated that the trial court improperly had (1) enforced the oral agreement despite its noncompliance with the statute of frauds, General Statutes § 42a-2-201, and (2) admitted, as well as excluded, certain testimony regarding statements by Simmons in violation of General Statutes § 52-172.

I

On appeal, the defendant argues that the oral contract was invalid, not for the reasons advanced at trial, but because a writing was required by § 42a-2-201.[4] This argument is unpersuasive for two reasons.

First, the defendant's claim, as a matter of procedure, cannot succeed because he did not raise any claim under § 42a-2-201 at trial. "It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. Practice Book § 60-5; *Yale University* v. *Blumenthal*, 225

---

[4] General Statutes § 42a-2-201 provides in relevant part: "(1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties . . . .

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller . . . has made either a substantial beginning of their manufacture or commitments for their procurement . . . ."

Conn. 32, 36 n.4, 621 A.2d 1304 (1993) . . . ." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000). This court will undertake review of unpreserved claims only when the claim is of constitutional magnitude; *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); or there has been plain error resulting in a manifest injustice that has affected the fairness of the judicial proceeding. Practice Book § 60-5; *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 768, 717 A.2d 150 (1998). Neither of these exceptions is applicable in this case.

Second, even if we exercise our discretion to overlook this procedural failing, the defendant's § 42a-2-201 argument fails as a matter of substance. While we agree that § 42a-2-201 is the applicable statute, this section does not bar the enforcement of the plaintiff's oral agreement. When a trial court reaches a correct outcome, but on grounds that cannot be sustained, appellate courts have repeatedly upheld the court's judgment if there are other grounds to support it. *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 794, 749 A.2d 1144 (2000); *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 702, 694 A.2d 788 (1997).

Whether the court properly applied the relevant provisions of § 42a-1-101 et seq. "involves statutory interpretation, which is a question of law. Therefore, our review of this issue is plenary." (Internal quotation marks omitted.) *37 Huntington Street H, LLC* v. *Hartford*, 62 Conn. App. 586, 590, 772 A.2d 633, cert. denied, 256 Conn. 914, 772 A.2d 1127 (2001), citing *Turner* v. *Frowein*, 253 Conn. 312, 337, 752 A.2d 955 (2000). Under the circumstances of this case, we conclude that § 42a-2-201[5] does not bar the plaintiff's right to recovery.

---

[5] See footnote 4.

Section 42a-2-201 is the applicable statute in this case because it takes priority over § 42a-1-206. True, on its face, § 42a-1-206 (2) excludes contracts for the sale of goods from the writing requirement of subsection (1). This article one provision, does not, however, purport to supersede statute of frauds provisions elsewhere in § 42a-1-101 et seq. It does not say that such contracts are altogether exempt from the statute of frauds. Contracts for the sale of goods, although excluded from the general provisions of § 42a-1-206, are governed by § 42a-2-201. See General Statutes Ann. § 42a-1-206, Uniform Commercial Code Comment (West 1990) (purpose of § 42a-1-206 is "[t]o fill the gap left by the [s]tatute of [f]rauds provisions for goods [Section 2-201]"); *Decatur Cooperative Assn.* v. *Urban*, 219 Kan. 171, 175, 547 P.2d 323 (1976) ("purpose of [UCC 1-206] is to include within its provisions sales . . . which are not subject to the provisions of [UCC] 2-201"); see also *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997) (" '[i]t is a well-settled principle of [statutory] construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling' "); *Burns* v. *Gould*, 172 Conn. 210, 216–17, 374 A.2d 193 (1977) (stating that contracts for sale of securities expressly excluded from § 42a-1-206 because such contracts are specifically covered by General Statutes § 42a-8-319).

Under § 42a-2-201, oral agreements for the sale of goods at a price of $500 or more are presumptively unenforceable. General Statutes § 42a-2-201 (1); see also *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 608, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). The applicable provisions in this case, however, are other subsections of § 42a-2-201.

Under § 42a-2-201 (3) (a), an oral contract for the sale of goods is enforceable if the goods in question

are "specially manufactured."[6] In determining whether the specially manufactured goods exception applies, courts generally apply a four part standard: "(1) the goods must be specially made for the buyer; (2) the goods must be unsuitable for sale to others in the ordinary course of the seller's business; (3) the seller must have substantially begun to have manufactured the goods or to have a commitment for their procurement; and (4) the manufacture or commitment must have been commenced under circumstances reasonably indicating that the goods are for the buyer and prior to the seller's receipt of notification of contractual repudiation." *Webcor Packaging Corp.* v. *Autozone, Inc.*, 158 F.3d 354, 356 (6th Cir. 1998). In applying this standard, "courts have traditionally looked to the goods themselves. The term specially manufactured, therefore, refers to the nature of the particular goods in question and not to whether the goods were made in an unusual, as opposed to the regular, business operation or manufacturing process of the seller." (Internal quotation marks omitted.) Id., 357, quoting *Impossible Electronics Techniques, Inc.* v. *Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1037 (5th Cir. 1982).

Printed material, particularly that, as in this case, names the buyer, has been deemed by both state and federal courts to fall within the exception set out for specially manufactured goods. Illustrative cases include *Perlmuter Printing Co.* v. *Strome, Inc.*, 436 F. Sup. 409 (N.D. Ohio 1976); *Burger Man, Inc.* v. *Jordan Paper Products, Inc.*, 170 Ind. App. 295, 352 N.E.2d 821 (1976); *Associated Lithographers* v. *Stay Wood Products, Inc.*, 279 N.W.2d 787 (Minn. 1979); and *Smith-Scharff Paper*

---

[6] Section 42a-2-201 (3) (a) provides in relevant part that "[a] contract which [is not in writing] but which is valid in other respects is enforceable (a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller . . . has made either a substantial beginning of their manufacture or commitments for their procurement . . . ." See footnote 4.

*Co.* v. *P.N. Hirsch & Co. Stores, Inc.*, 754 S.W.2d 928 (Mo. App. 1988).

It is inherent in the court's findings that the printed materials in the present case were specially manufactured goods. The materials were printed specifically for Caprilands. The materials included brochures and labels with the Caprilands name, as well as books that were written and designed by Simmons. The plaintiff testified that the books were printed, as Simmons had requested, in a rustic style with typed inserts and hand-drawn pictures. Therefore, none of these materials was suitable for sale to others. It is undisputed that, at the time of breach of the alleged contract, goods printed for Simmons already had been produced.

We conclude that, in light of the nature of the goods at issue and the findings of the trial court, the oral agreement in this case falls within the exception for specially manufactured goods. To be enforceable, the agreement for their production was, therefore, not required to be in writing under § 42a-2-201 (3) (a). Accordingly, we affirm the judgment of the court on this issue because it reached the right result, even if it did so for the wrong reason. See, e.g., *Flagg Energy Development Corp.* v. *General Motors Corp.*, 244 Conn. 126, 151, 709 A.2d 1075 (1998); *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978); *Amsden* v. *Fischer*, 62 Conn. App. 323, 327, 771 A.2d 233 (2001).

II

The defendant next claims that the court misapplied the so-called dead man's statute, § 52-172, in admitting certain testimony regarding statements by Simmons and excluding other testimony by the defendant. We disagree.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will

be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *O'Brien* v. *Coburn*, 46 Conn. App. 620, 630, 700 A.2d 81, cert. denied, 243 Conn. 938, 702 A.2d 644 (1997). In reviewing claims that the court abused its discretion, every reasonable presumption should be made in favor of upholding the court's ruling. *Pender* v. *Matranga*, 58 Conn. App. 19, 28, 752 A.2d 77 (2000).

It is fundamental in evidentiary law that an out-of-court statement that is offered to establish the truth of the facts contained in the statement is hearsay and is generally inadmissible unless an exception to the general rule applies. *State* v. *Wargo*, 255 Conn. 113, 127, 763 A.2d 1 (2000). Section 52-172 states one such exception. See C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.47.2, p. 727. "Its purpose is to create an equal footing between the living and the dead parties. . . . Although it is to be interpreted liberally, every utterance of a deceased person is not automatically entitled to come into evidence solely because the speaker has died." (Citation omitted; internal quotation marks omitted.) *Pender* v. *Matranga*, supra, 58 Conn. App. 28.

Pursuant to § 52-172, "[i]n actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ." Therefore, the action in which statements by Simmons are admitted must be by or against Simmons' representatives; *O'Brien* v. *Coburn*, supra, 46 Conn. App. 632; and the statements must be relevant to the issue being decided. *Gulack* v. *Gulack*, 30 Conn. App. 305, 316–17, 620 A.2d 181 (1993).

The defendant first argues that the court improperly admitted testimony by Simmons' employee, Lee, with

regard to statements made to him by Simmons. We are not persuaded.

Lee's testimony, as the court held, is admissible under § 52-172. This action was brought by the plaintiff against a representative of Simmons, the executor of her estate. The statements admitted by the court pertained to Simmons's instructions to Lee to pick up the printed materials at issue. The statements were therefore relevant to determining the existence of an oral agreement between the plaintiff and Simmons. We can find no support for the defendant's assertion that the court abused its discretion in admitting Lee's testimony.

The defendant next claims, also under § 52-172, that the court improperly excluded certain testimony offered by the defendant. Specifically, the defendant challenges the court's exclusion of testimony in which the defendant was prepared to testify about discussions, if any, between Simmons and himself on the subject of the oral agreement.

During direct examination, the defendant was asked whether Simmons had ever told him about any oral contracts she had made in 1977 and whether she had ever spoken about Clinton Press. The court sustained objections to both questions. The court articulated that "it's not merely that it's hearsay, but whether she spoke about something is not relevant." The defendant concededly was attempting to establish that if Simmons had made such an agreement, she would have so informed the defendant. The court responded that "[t]here's no logical connection that [Simmons] would discuss every single order she made with [the defendant] . . . . So the fact that it was not mentioned to him is not evidence that it didn't occur."

Our review of the record reveals that the court placed no further constraints on the defendant's testimony.

Notably, it permitted the defendant to testify about other statements made by Simmons.

The court had the authority to exclude testimony as not relevant to the matter to be decided. Section 52-172 is not a carte blanche for the admission of statements by a decedent in an action brought by or against a representative of the decedent. The court did not abuse its discretion in permitting Lee's testimony to be heard and in excluding two statements proffered by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.