### WALTER HAESCHE ET AL. *v.* EDWARD KISSNER III ET AL.
(14721)

PETERS, C. J., BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued January 5—decision released March 18, 1994*

---

* March 18, 1994, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*William H. Clendenen, Jr.,* with whom were *Nancy L. Walker, James E. Clifford* and, on the brief, *David M. Lesser,* for the appellants (plaintiffs).

*Mark J. Claflin,* for the appellee (defendant Coleman Company, Inc.).

NORCOTT, J. The dispositive issue in this products liability appeal is whether the evidence before the trial court raised a genuine issue of material fact regarding whether the conduct of the manufacturer defendant, Coleman Company, Inc. (Coleman), was the proximate cause of the named plaintiff's injuries. We conclude that no genuine issue of material fact existed and that the trial court, therefore, properly granted Coleman's motion for summary judgment. Accordingly, we affirm the judgment.

The plaintiff, sixteen year old William Haesche,[1] brought this action against Coleman[2] for alleged violations of the Connecticut Product Liability Act; General Statutes § 52-572m et seq.; and the Connecticut

---

[1] William's parents, Walter and Marianne Haesche, are also plaintiffs in this case. Their claims against the defendant Coleman Company, Inc., rest on the same legal and factual grounds as William's claims. For the sake of clarity and because their claims will survive or be barred according to the disposition of the issues on appeal as applied to William, we refer to William as the plaintiff.

[2] The other original defendants were: Edward Kissner III; Beverly Grove, Kissner's mother; and Caldor, Inc. These defendants are no longer involved in the case because the plaintiff settled his claims with Kissner, Grove and Caldor, Inc.

Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. Coleman moved for summary judgment alleging, inter alia, that its actions did not proximately cause the plaintiff's injuries and that no genuine issue of material fact existed with respect to this claim. The trial court, *Gray, J.,* granted Coleman's motion for summary judgment and rendered judgment for Coleman on the complaint. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The following facts are undisputed. On April 8, 1986, the named defendant, seventeen year old Edward Kissner III, purchased a Crosman Model 66 Powermaster .177 Caliber Pellet/BB air rifle (Crosman 66), manufactured by Coleman, from Caldor, Inc., a department store located in Hamden. Kissner bought the gun in order to participate in an activity that he and his friends called "war games." Later that afternoon, Kissner, fifteen year old Christopher Millea, sixteen year old Richard Davies, and the plaintiff engaged in war games as they had on previous occasions. Armed with air rifles and wearing several layers of clothing for protection, the young men went to a wooded area, divided into two teams, dispersed and began hunting for and shooting at each other. In the course of the war games, Kissner shot at a tree behind which he knew the plaintiff was hiding. At that moment, the plaintiff stepped out from behind the tree and was struck in the eye by the BB that Kissner had fired. As a result, the plaintiff suffered serious injury to his eye.

The plaintiff filed a fourteen count complaint alleging, inter alia, that Coleman's failure to provide adequate warnings regarding the ability of the Crosman 66 to cause serious eye injury violated the Product Liability Act and constituted an unfair trade practice under

CUTPA. By his complaint, the plaintiff sought both money damages and injunctive relief.[3]

The trial court granted Coleman's motion for summary judgment concluding both that the risk of serious eye injury was an open and obvious danger of which Coleman had no duty to warn, and that the alleged failure to warn could not have proximately caused the plaintiff's injury. The trial court further concluded that because the plaintiff was not the purchaser of the air rifle, he lacked standing to assert a claim under CUTPA. Thereafter, the trial court rendered judgment for Coleman on each count of the complaint in which it was named.

The plaintiff has appealed the judgment claiming, inter alia, that the trial court improperly concluded: (1) that Coleman's conduct did not cause the plaintiff's injuries; and (2) that the plaintiff lacked standing to assert a CUTPA violation.[4] We now affirm the judgment of the trial court because, on the basis of the evidence before the trial court, a fair and reasonable person could conclude only that the failure to warn did

---

[3] The injunction would have restricted sales of the Crosman 66 to only those persons who were over eighteen years of age and who were in possession of a permit to carry an air rifle at the time of purchase.

[4] The plaintiff also claims that the trial court improperly: (1) concluded, as a matter of law, that the Crosman 66 was not defective because Coleman had no duty to warn; (2) failed to allow the jury to decide whether Coleman's warnings were adequate; (3) concluded that the dangers of operating an air rifle were open and obvious; (4) failed to submit his claim for punitive damages to the jury; (5) failed to submit the question of "comparative responsibility" to a jury; and (6) concluded that the plaintiff's CUTPA claim was barred by a lack of privity. Because our determination on the issue of proximate cause bars both the plaintiff's product liability and CUTPA claims to which these issues relate, we need not reach these claims.

Finally, the plaintiff claims that the trial court improperly failed to submit its negligent entrustment claims to a jury. A careful review of the plaintiff's complaint, however, reveals that no such claim was made against Coleman. We, therefore, decline to review this claim on appeal.

not cause the plaintiff's injuries. We, therefore, do not address the issue of whether, under Connecticut law, the risk of serious eye injury resulting from misuse of a BB gun is so "open and obvious" a danger as to obviate a manufacturer's duty to warn.

I

The standard for appellate review of a trial court decision to grant a motion for summary judgment is well established. "Practice Book § 384 provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Scrapchansky* v. *Plainfield,* 226 Conn. 446, 450, 627 A.2d 1329 (1993). Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* 219 Conn. 772, 781, 595 A.2d 334 (1991); see Practice Book §§ 380 and 381. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . ." (Citations omitted; internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates,* supra, 781.

The plaintiff first claims that the trial court improperly granted Coleman's motion for summary judgment on the plaintiff's product liability claims. The plaintiff contends that if Coleman had adequately warned Kissner of the dangers of engaging in war games, the plaintiff would not have been shot in the eye. He further contends that whether Coleman's warnings were ade-

quate is a question for the trier of fact and that the trial court, therefore, improperly granted Coleman's motion for summary judgment. Conversely, Coleman argues that on the basis of the affidavits and other documentary evidence before the court, no genuine issue of material fact existed regarding whether the alleged failure to warn caused the plaintiff's injuries. Coleman asserts that Kissner's admissions and conduct conclusively established that the existence of a warning would not have prevented him from playing war games and that as a result even if the warnings argued for by the plaintiff were given, the plaintiff's injuries would not have been avoided.

"In a products liability action, the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries." *Wierzbicki* v. *W. W. Grainger, Inc.,* 20 Conn. App. 332, 334, 566 A.2d 1369 (1989), citing *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 403, 528 A.2d 805 (1987). It is the established rule in Connecticut that "[a] product may be defective because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities." *Tomer* v. *American Home Products Corp.,* 170 Conn. 681, 689, 368 A.2d 35 (1976); *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 235, 429 A.2d 486 (1980). Under such circumstances, the failure to warn, by itself, constitutes a defect. See General Statutes § 52-572q.

The issue of causation in warnings cases is governed by § 52-572q (c), which states that "the [plaintiff] shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the [plaintiff] would not have suffered the harm." Generally, questions regarding the existence of a causal link are reserved for the trier of fact. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 130, 540 A.2d 666 (1988); *Trzcinski* v. *Richey,* 190 Conn. 285, 295, 460 A.2d 1269

(1983); however, the issue becomes one of law "when the mind of a fair and reasonable [person] could reach only one conclusion . . . ." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 757, 563 A.2d 699 (1989).

Applying these principles to the evidence in the record, we conclude that the trial court properly determined that no genuine issue of material fact existed regarding whether the alleged failure to warn Kissner of the dangers associated with the use of the air rifle could have proximately caused the plaintiff's injuries. In the present case, the plaintiff alleged that Coleman had failed to warn Kissner of the possibility that a BB shot from the air rifle that he had purchased could seriously injure a person's eye. To prevail on his failure to warn claim, the plaintiff had the burden of proving that if the product had contained an adequate warning, Kissner would not have participated in the war games and, as a result, the plaintiff would not have suffered a serious eye injury.

In support of its motion for summary judgment, Coleman presented affidavits, deposition testimony, and other documentary evidence tending to show that no warning would have changed Kissner's behavior. A review of the evidence submitted reveals the following relevant facts. Kissner was familiar with the operation and potential power of the air rifle. He testified, in a deposition, that he had used an air rifle prior to his purchase and use of the Crosman 66, and that he had known that the air rifle's power depended on the number of times its air chamber had been pumped. He testified that prior to the day of the shooting he had shot an air rifle at birds and glass bottles and that he was aware that a BB shot from the Crosman 66 could shatter glass and kill small animals. Kissner also testified that he had engaged in war games prior to the day

of the shooting, and that he had suffered welts and bruises after being struck by a BB through his clothing.

Kissner further testified that he had known that a BB shot from the Crosman 66 could seriously injure a person's eye. In fact, Kissner testified that the young men had taken a number of precautions against injury and even adopted a set of rules in order to prevent damage to the head and eyes. They had worn extra layers of clothing and discussed wearing sunglasses and goggles on the day prior to the shooting.

Additionally, Christopher Millea testified, in a deposition, that on the day of the shooting he had worn protective goggles while participating in the war games. The precautionary rules prohibited: (1) pumping the air rifles more than two or three times, in order to minimize the velocity of the BBs; (2) shooting above the waist; and (3) shooting without first clearly identifying the target.

Kissner also testified that at the time of the shooting he had known that his parents disapproved of his using BB guns. In fact, he went to great lengths to hide his purchase and use of the gun from his mother because "she would have been very upset" and would have taken the gun away. Moreover, Kissner admitted that he had been so concerned with concealing his purchase that he had never looked at the outside or the inside of the gun's box for any written warnings or instructions.[5] Most importantly, Kissner testified that

---

[5] It is undisputed that the following warning was on the outside of the gun's box: "**CAUTION.** NOT A TOY. ADULT SUPERVISION REQUIRED. MISUSE OR CARELESS USE MAY CAUSE SERIOUS INJURY OR DEATH. MAY BE DANGEROUS UP TO 475 YARDS (435 METERS). READ ALL INSTRUCTIONS BEFORE USING. BUYER AND USER HAVE THE DUTY TO OBEY ALL LAWS ABOUT THE USE AND OWNERSHIP OF THIS AIRGUN."

Kissner was asked during deposition whether he had observed *any* printing or writing on the outside of the box while unwrapping the gun. He

his father had instructed him in the use of and dangers posed by the misuse of BB guns. They had gone into the woods and shot at balloons on three or four occasions. In the course of these training sessions Kissner's father had warned him explicitly "[n]ot to point [the gun] at anybody" and that a person was "not supposed to shoot BBs at people. It's dangerous."

In response, the plaintiff offered the depositions of his two expert witnesses and his own affidavit. Robert Cunitz, an expert in the areas of product safety and warnings, testified that the warnings accompanying the Crosman 66 had been inadequate, that the dangers presented by air rifles are not publicly known and are not adequately perceived through common sense, and that the failure to provide proper warnings had rendered the Crosman 66 defective. Lama Martin, a forensic ballistics expert, testified that the Crosman 66 is unreasonably dangerous because it has excessive power and velocity capability considering its intended use, target shooting. The plaintiff's affidavit stated that, prior to the shooting, he had viewed BB guns as toys and not weapons, that he did not know that a BB could penetrate the skin or eye, and that if he had known these things, he would not have participated in the war games. The plaintiff also noted that, in response to a request for admissions, Kissner had indicated that prior to the shooting he had not known that a BB could penetrate the eye.

Viewing this evidence in the light most favorable to the plaintiff, we conclude that a fair and reasonable person could not conclude that a warning would have altered Kissner's behavior. Although Kissner stated in

replied, "No. I was in a hurry. I ripped open the box, took it out, put everything underneath the bed and left." When asked whether he had looked inside of the box for paperwork accompanying the gun, Kissner replied, "No."

his response to the plaintiff's request for admission that he did not know a BB could actually penetrate the eye, he testified in his deposition that he was aware that serious eye injury could result from his misuse of the Crosman 66. Furthermore, despite this knowledge, Kissner wilfully disregarded and disobeyed his parent's explicit warnings and prohibitions regarding the use of air rifles. Conversely, the evidence offered by the plaintiff in opposition does not substantiate his adverse claim. The testimony of the plaintiff's experts bears on the issue of the adequacy of the warnings in the abstract, but does not refute Coleman's assertion that no warning would have altered Kissner's behavior. Similarly, the plaintiff's own affidavit does not bear on the issue of whether Kissner would have acted differently if he had been warned by Coleman. As a result, we conclude that there was no genuine issue of material fact regarding causation, and that Coleman was entitled to judgment as a matter of law. The trial court, therefore, properly granted Coleman's motion for summary judgment on the plaintiff's product liability claims.

## II

The plaintiff next claims that the trial court improperly concluded that he did not have standing to bring a claim under CUTPA. He contends that, by marketing the Crosman 66 without adequate warnings, Coleman engaged in unfair or deceptive trade practices in violation of General Statutes § 42-110b (a). The plaintiff further claims that the record contains conflicting evidence as to whether Coleman's actions constituted unfair trade practices and that he is, therefore, entitled to have this disputed question of fact decided by a jury. The plaintiff's claim, however, must fail because in order to prove a private cause of action under CUTPA, the plaintiff must show not only that Coleman engaged

in an unfair trade practice, but that he suffered harm as a result. General Statutes § 42-110g (a).

Our decision rests on the plain language of General Statutes § 42-110g (a). "The objective of statutory construction is to give effect to the intended purpose of the legislature. *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981)." (Internal quotation marks omitted.) *Forsyth* v. *Rowe,* 226 Conn. 818, 828, 629 A.2d 379 (1993). "Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." *All Brand Importers, Inc.* v. *Dept. of Liquor Control,* 213 Conn. 184, 195, 567 A.2d 1156 (1989).

Section 42-110g (a) provides in relevant part that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, *as a result of the use or employment of* a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . ." (Emphasis added.) As we have noted in a number of prior decisions, this section provides a private cause of action under CUTPA, which utilizes private litigation to achieve its remedial purpose. *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn. 528, 534–35, 461 A.2d 1369 (1983); *Hinchliffe* v. *American Motors Corp.,* 184 Conn. 607, 616–17, 440 A.2d 810 (1981). Indeed, although CUTPA includes a number of provisions that serve to encourage private litigation; *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.,* supra, 535–36; the opportunities for private enforcement are not unlimited. *Conaway* v. *Prestia,* 191 Conn. 484, 494, 464 A.2d 847 (1983); see *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 343, 576 A.2d 464 (1990). The plain language of § 42-110g (a) provides one limitation by requiring that the plaintiff suffer an ascertainable

loss that was caused by the alleged unfair trade practice. We have already determined, in part I, that, on the evidence before the trial court, the alleged failure to warn that the plaintiff claims is an unfair trade practice was not the cause of his injuries. We conclude therefore that, as a matter of law, the plaintiff could not establish a CUTPA violation for failure to warn because, as we determined in part I, he failed to show that he suffered harm "as a result of" the alleged violation. Consequently, the trial court was correct in rendering summary judgment for the defendant on the CUTPA claim.

The judgment is affirmed.

In this opinion the other justices concurred.