KERRY D. WEIGOLD, ADMINISTRATOR (ESTATE OF
FRANCES WEIGOLD) *v.* JAYANTKUMAR C.
PATEL ET AL.
(AC 23289)

Lavery, C. J., and Dranginis and Hennessy, Js.

Argued October 21, 2003—officially released February 3, 2004

*Michael J. Walsh*, with whom was *Ann W. Henderson*, for the appellant (plaintiff).

*John B. Farley*, with whom, on the brief, were *David G. Hill*, *Laura P. Zaino* and *Regan O'Malley*, for the appellee (named defendant).

*Louis B. Blumenfeld*, with whom were *Lorinda S. Coon* and, on the brief, *Jeffrey C. Pingpank*, for the appellee (defendant Lynne E. Weixel).

*Opinion*

DRANGINIS, J. The issue in this wrongful death action is whether a psychiatrist and a psychologist have a duty to warn their patient not to operate a motor vehicle after ingesting prescribed medication. The plaintiff's decedent was killed in a motor vehicle collision that was caused by the defendants' patient who had fallen asleep while operating her vehicle. We conclude, as a matter of law, under the facts of this case, that the defendants had no duty to warn the patient not to operate her motor vehicle for the benefit of the decedent and, therefore, affirm the judgment of the trial court.

The plaintiff, Kerry D. Weigold, administrator of the estate of his deceased wife, Frances Weigold (decedent), appeals from the judgment of the trial court rendered after it granted the motions for summary judgment filed by the defendants, Jayantkumar C. Patel (psychiatrist) and Lynne E. Weixel (psychologist). On appeal, the plaintiff claims that it was improper for the court to grant the defendants' motions for summary judgment by concluding that (1) the defendants did not owe his decedent a duty of care, (2) he could not avail himself of the automatic ninety day extension provided by General Statutes § 52-190a (b), (3) the psychiatrist was entitled to summary judgment despite his failure to comply with certain provisions of our rules of practice, (4) there were no genuine issues of material fact with respect to the psychologist and (5) the law of the case was inapplicable to the motions for summary judgment.

The plaintiff first brought a wrongful death action against the patient, a registered nurse. During her deposition, the patient revealed that she has a history of psychiatric illness and was being treated by the defendants. As a result of taking medicine that had been prescribed for her, the patient suffered sleep disturbances and was prone to fall asleep during the day. Thereafter, in 1999, the plaintiff commenced this wrongful death action against the defendants. When the pleadings were closed, the defendants filed separate motions for summary judgment with regard to the respective allegations of negligence against them. The court granted both motions, and the plaintiff appealed.

A motion for summary judgment shall be granted if the pleadings, affidavits and any other proof submitted demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. A complaint sets forth the material facts at issue with respect to a

motion for summary judgment. See *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244, 659 A.2d 1226, cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

In his revised complaint, the plaintiff alleged in relevant part that his decedent was killed at approximately 2 p.m. on August 22, 1997, when the motor vehicle she was operating was struck head on by the motor vehicle that was operated by the patient, who had fallen asleep at the steering wheel. He also alleged that for a substantial period of time prior to the accident, the patient had suffered from severe psychiatric illness and was being treated by both of the defendants. The medicine that was prescribed for her illness disrupted her sleep and caused her to fall asleep during the day. Prior to the date of the accident, the patient knew that the medicine she was taking affected her behavior, muscle control and coordination. She also knew that as a result of taking her medicine, she was a poor driver, and she had questioned the psychologist about whether she should drive.

Furthermore, the complaint alleged that for a period of time before and including August 22, 1997, the psychiatrist had a physician-patient relationship with the patient. The plaintiff alleged that the psychiatrist was negligent and careless in his treatment of the patient and that his treatment deviated from the standard of medical care in a number of ways in that, among other things, he failed to advise the patient that she was unable to operate a motor vehicle safely and failed to advise her that when she was operating a motor vehicle on the highway, she was a danger to herself. The plaintiff alleged that as a result of the psychiatrist's negligence, the patient was allowed to operate her motor vehicle on the highway, thereby causing the collision and the decedent's death.

With respect to the psychologist, the complaint made similar allegations about the accident, the patient, the

effects of the medicine she was taking, the result of the alleged negligence and the decedent's death. More specific to the psychologist, however, the complaint alleged that prior to August 22, 1997, the psychologist knew that the patient had fallen asleep while she was operating her motor vehicle. The patient expressed concern to the psychologist about her ability to operate a motor vehicle safely, and on at least one occasion prior to the accident, the psychologist had followed the patient's motor vehicle in her own vehicle to determine the patient's ability to drive. The psychologist concluded that the patient could not keep her vehicle within the recognized lane of traffic. The patient also fell asleep during her therapy sessions with the psychologist.

The complaint alleged that the psychologist was negligent and that her treatment of the patient deviated from the standard of care in that she failed to advise the patient that it was not safe to operate her motor vehicle, failed to consult with the patient's physicians, including the psychiatrist, and failed to advise the patient of the risks of operating a motor vehicle on the highway when she knew or should have known that doing so exposed the patient and others to danger.[1]

After the pleadings were closed, the defendants filed their motions for summary judgment.[2] In her motion, the psychologist asserted three grounds for granting the motion for summary judgment: (1) the plaintiff's action sounded in medical malpractice, and there was no physician-patient relationship between the decedent and the psychologist, (2) the action was barred by the

---

[1] The complaint also alleged with respect to both of the defendants the further consequences of the defendants' negligence, primarily the death of the decedent and the related losses. Those allegations are not relevant to the defendants' motions for summary judgment.

[2] In their answers to the complaint, the defendants asserted special defenses, including that (1) the action was barred by the applicable statute of limitations and (2) they owed no duty of care to the decedent.

applicable statute of limitations, General Statutes § 52-584, and (3) she breached no duty of care owed to the decedent. In his motion for summary judgment, the psychiatrist asserted three similar grounds as to why his motion should be granted.[3]

The court granted the defendants' motions for summary judgment, stating first that it was reasonable to conclude that the defendants knew or should have known that the patient was at risk of falling asleep while operating her motor vehicle. The court ultimately concluded, however, that because there was no physician-patient relationship between the defendants and the decedent, they did not owe her a duty of care. Citing public policy on which our Supreme Court has relied,[4] the trial court reasoned that the decedent was not a member of an *identifiable* class of victims at risk due to the patient's impaired ability to operate a motor vehicle because the class defined by the plaintiff was too broad to be identifiable. The class, the court reasoned, included pedestrians, bicyclists, property owners and operators from other states and beyond who

---

[3] The court denied the motions for summary judgment on the basis of the statute of limitations special defense, concluding that there was a genuine issue of material fact as to whether the plaintiff should have discovered the defendants' alleged negligent conduct sooner, which was for the jury to determine. The court, however, concluded that General Statutes § 52-190a (b) did not apply to extend by ninety days the statute of limitations imposed by General Statutes § 52-584 because there was no physician-patient relationship between the decedent and the defendants.

[4] See *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 97, 735 A.2d 347 (1999) (psychotherapist owed undivided loyalty to patient, not to patient's former spouse); *Zamstein* v. *Marvasti*, 240 Conn. 549, 559, 692 A.2d 781 (1997) (mental health professional engaged to evaluate whether sexual abuse occurred owes no duty of care to alleged sexual abuser); *Fraser* v. *United States*, 236 Conn. 625, 627, 674 A.2d 811 (1996) (medical center had no duty to control outpatient to avoid injury to unidentifiable third persons); *Evon* v. *Andrews*, 211 Conn. 501, 507–508, 559 A.2d 1131 (1989) (municipal employees shielded by governmental immunity unless discrete person-imminent harm exception applies); *Shore* v. *Stonington*, 187 Conn. 147, 152, 444 A.2d 1379 (1982) (public versus private duty).

use our public highways. The court, therefore, concluded that the defendants did not have a duty *to warn the class* because that was analogous to stating that the defendants had a duty to warn the general public about the patient's impaired ability to operate a motor vehicle.[5]

Before we address the plaintiff's claims, we set forth the well established standard of review regarding motions for summary judgment. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994).

I

The plaintiff's first claim is that the court improperly concluded that the defendants did not owe his decedent

---

[5] We agree with the plaintiff's position on appeal that the court mischaracterized the duty he alleged in his revised complaint. He did not allege that the defendants had a duty to warn his decedent or the class. He alleged that the defendants had a duty *to warn the patient* not to operate a motor vehicle to prevent injury to the members of an identifiable class. Nonetheless, we may uphold the court's judgment "because it reached the right result, even if it did so for the wrong reason." *Kalas* v. *Cook*, 70 Conn. App. 477, 485, 800 A.2d 553 (2002).

a duty of care to warn the patient not to operate a motor vehicle on the highway. See footnote 4. The plaintiff's claim, to put it another way, is that if the defendants had warned the patient not to operate her motor vehicle, the accident would not have happened. The psychiatrist has argued on appeal that the objective of the plaintiff's claim is that the defendants should have controlled the patient's behavior. We agree. Because the defendants were not in the position to control the patient's behavior, we conclude, pursuant to our plenary review, that the defendants' failure to warn the patient not to operate her motor vehicle was not the proximate cause of the decedent's death. The proximate cause of the decedent's death was the patient's operating her motor vehicle on the highway even though she knew that her ability to do so was impaired. The defendants, therefore, owed no duty of care to the decedent.

The plaintiff's argument of law "invokes the well established proposition that a tortfeasor is liable for all damages proximately caused by its negligence." *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 604, 724 A.2d 497 (1999). "To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . [L]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. (Citations omitted; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–25, 734 A.2d 85 (1999).

"Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to

establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . In negligence cases such as the present one, in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff." (Citations omitted.) *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, supra, 247 Conn. 604.

"The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Essential to determining whether a legal duty exists is the fundamental policy of the law that a tortfeasor's responsibility should not extend to the theoretically endless consequences of the wrong. . . . Even where harm was foreseeable, [our Supreme Court] has found no duty when the nexus between a defendant's negligence and the particular consequences to the plaintiff was too attenuated." (Citations omitted; internal quotation marks omitted.) Id., 605.

"[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendant's conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be *based upon more than conjecture and surmise.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church*

*Corp.*, supra, 250 Conn. 25–26. See also *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995).

In the trial court and on appeal, the parties relied on failure to warn cases involving mental health or other health care providers. Because many of those cases are factually distinguishable from the one here,[6] we look to a case in which our Supreme Court upheld the summary judgment rendered by the trial court under an analogous factual situation in which the primary actor was well aware of the risks involved in his behavior. See *Haesche* v. *Kissner*, supra, 229 Conn. 213.

In *Haesche*, without deciding whether the defendant manufacturer of an air rifle had a duty to provide an explicit warning, our Supreme Court determined that the nature of the warning was not the proximate cause of the plaintiff teenager's injury. The *Haesche* victim suffered a serious injury to his eye when it was struck by a BB pellet from an air rifle while he and his friends were playing games. Id., 215. The plaintiffs brought a products liability action against several defendants, claiming that the warning on the box was inadequate because it did not specifically state that the gun could cause serious injuries to the eye. Id. The trial court concluded that the failure to provide that warning was not the proximate cause of the victim's injury. Id., 219.

During his deposition, the defendant teenager who had shot the victim testified that he knew that a BB pellet could injure a person's eye, that he purchased

---

[6] See footnote 4. See also *Garamella* v. *New York Medical College*, 23 F. Sup. 2d 167, 174–75 (D. Conn. 1998) (instructor had duty to protect patients of psychiatric resident who was admitted pedophile); *Tarasoff* v. *Regents of University of California*, 17 Cal. 3d 425, 431, 131 Cal. Rptr. 14, 551 P.2d 334 (1976) (mental health provider had duty to warn of patient's threat of harm to identifiable victim); *McKenzie* v. *Hawai'i Permanente Medical Group, Inc.*, 96 Haw. 296, 297–98, 47 P.3d 1209 (2002) (patient fainted while driving due to new medicine prescribed three days before).

the gun contrary to his parents' prohibition and that his father had instructed him never to point a gun at anyone. Id., 219–21. The court concluded that no more specific warning on the box would have altered the teenager's behavior because he disregarded his father's warnings and disobeyed his parents' prohibitions. Id., 219.

Here, the patient knew without the benefit of a warning from the defendants that she was prone to falling asleep during the day, even when she was operating her motor vehicle. She knew that her driving was impaired. A registered nurse, she associated her sleep disturbance with the medicine she was taking for her mental illness. She questioned the psychologist about her ability to drive and was told that she had not operated her vehicle within the prescribed lane of travel. Those facts, of which the patient was aware, put her on notice that she was at risk when operating a motor vehicle on the highway. The patient was well aware of the substance of the warning the plaintiff claims the defendants had a duty to give her. We therefore conclude that the proximate cause of the decedent's injuries was the patient's operating her motor vehicle despite knowing that she was prone to falling asleep at the steering wheel, not the defendants' failure to tell her not to drive.

We will not speculate to assume that had the defendants told the patient not to drive, she would have heeded the warning, as she chose to drive despite knowing that she had fallen asleep while driving on prior occasions. The defendants did not control the patient or her activities; see *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 526 n.7, 832 A.2d 1180 (2003); and responsibility for the patient's poor judgment cannot be attributed to the defendants on the basis of their therapeutic relationship with her.

Our reasoning and conclusion are similar to those of the Supreme Court of Texas in *Praesel* v. *Johnson*, 967 S.W.2d 391, 398 (Tex. 1998), in which the court concluded that a physician does not have a duty to warn an epileptic patient not to operate his motor vehicle to protect third parties against his having a seizure that results in an accident. The *Praesel* court determined that an epileptic knows that he is subject to having a seizure, the risk of having a seizure while driving and the potential consequences of that risk. Id.; see also *Estate of Witthoeft* v. *Kiskaddon*, 557 Pa. 340, 353, 733 A.2d 623 (1999) (patient well aware of her impaired vision). "[T]he relative knowledge of the risk as between a patient and a physician is another factor to consider in deciding the threshold question of whether a physician owes a duty to third parties to warn a patient." *Praesel* v. *Johnson*, supra, 398. It cannot be assumed that a person who is warned not to operate a motor vehicle will heed the warning, as many patients do not follow their physicians' advice. In balancing the need for and the effectiveness of a warning to an epileptic against the burden of liability to third parties, the primary responsibility for the safe operation of a motor vehicle should remain with the operator. Id.

In coming to our conclusion, we are mindful that the facts of this case are tragic for everyone involved. We keenly are aware of the loss the plaintiff and his children have suffered. We note, however, that the plaintiff's loss has not gone wholly uncompensated. "[T]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . ." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 578–79, 717 A.2d 215 (1998).[7] This state has a comprehensive motor vehicle

---

[7] In *Lodge*, the plaintiffs were seeking damages from several business entities that negligently caused the transmission of a false fire alarm. As

insurance scheme that foresees the risks associated with the operation of a motor vehicle on our public highways. Here, our society's structure for compensating the victim of a motor vehicle operator's negligent act has been shifted to the responsible party. The decedent's estate has been compensated pursuant to the patient's motor vehicle insurance. Compare id.

For all of the foregoing reasons, the granting of the defendants' motions for summary judgment was not improper, although it was done on other grounds.

## II

The plaintiff also claims that it was improper for the court to grant the psychiatrist's motion for summary judgment because he had failed to comply with certain of our rules of practice. Specifically, the plaintiff claims that the psychiatrist failed to comply with discovery requests and to file a statement of facts in support of his motion for summary judgment. Although we do not condone the psychiatrist's failure to respond to discovery requests,[8] the plaintiff has failed on appeal to demonstrate that he was prejudiced by the court's rendering of summary judgment in favor of the psychiatrist. The summary judgment was rendered on a matter of law that was not the subject of any factual dispute.

There was no factual dispute that the psychiatrist did not have a physician-patient relationship with the

---

they were responding to the alarm, a number of firefighters were killed or injured when the negligently maintained brakes of their fire truck failed. *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 566. The jury returned a verdict in favor of the plaintiffs, but our Supreme Court reversed the judgment on the basis of foreseeability in the nature of general harm. The victims, however, had been compensated for their loss pursuant to workers' compensation benefits. Id., 579–80.

[8] Although the plaintiff cited no rule of practice in his brief, we assume that he is relying on Practice Book § 11-10, which provides in relevant part: "A memorandum of law briefly outlining the claims of law and authority pertinent thereto shall be filed and served by the movant with the following motions . . . (5) motions for summary judgment. . . ."

decedent. In part I, we concluded that the psychiatrist's alleged failure to warn the patient was not the proximate cause of the accident at issue. We therefore conclude that it was not improper for the court to grant the psychiatrist's motion for summary judgment because he failed to answer discovery requests or to submit a memorandum of law in support of his motion for summary judgment. The plaintiff was aware of the facts and law on which the psychiatrist was relying.

## III

The plaintiff's next claim is that the court improperly rendered summary judgment by concluding that there were no genuine issues of material fact with respect to the psychologist. The basis of the plaintiff's claim is that because the psychologist at one time followed the patient in her vehicle, the psychologist assumed a duty to individuals who travel the highways. We disagree.

There appears to be no dispute that the psychologist at one time operated her motor vehicle behind that of the patient and determined that she did not stay within the prescribed lane of travel. There was no dispute that this event did not occur on the date of the accident in which the decedent was killed. There also was no dispute that the psychologist did not control the patient on the day in question or at any time.[9]

The plaintiff relies on the legal principle that if one gratuitously undertakes a service that she has no duty to perform, she must act with reasonable care. See *Coville* v. *Liberty Mutual Ins. Co.*, 57 Conn. App. 275, 281–82, 748 A.2d 875, cert. granted on other grounds, 253 Conn. 919, 755 A.2d 213 (2000) (appeal withdrawn March 30, 2001). Two sections of the Restatement (Second) of Torts extend liability where a person by her

---

[9] In addressing the plaintiff's claim, we do not imply or decide that the psychologist was qualified to determine the patient's ability to operate a motor vehicle.

conduct assumes a duty to protect another.[10] "[T]his duty arises particularly in special relationships where the plaintiff is typically in some respect particularly vulnerable and dependent upon the defendant who, correspondingly, holds considerable power over the plaintiff's welfare." (Internal quotation marks omitted.) Id., 281. Hypothetically speaking, we note that the application of that rule to the psychologist's observing the patient operate her motor vehicle would result in a duty of care owed to the patient, not to a third party. In reality, however, the rule not only fails to apply to the relationship between the patient and the psychologist, as the patient was not in the psychologist's control, it also does not apply because there was no relationship between the psychologist and the decedent.

As we concluded in part I, the psychologist's alleged failure to warn the patient not to operate her motor vehicle was too attenuated from the patient's falling asleep at the steering wheel, which was the proximate cause of the decedent's death, to impose a duty on the psychologist for the decedent's benefit.

On the basis of our conclusion in part I, we need not address the plaintiff's remaining claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] See 2 Restatement (Second), Torts §§ 314A, 324 (1965).