SCOTT D. VAILLANCOURT *v.* VAHEEM LATIFI ET AL.
(AC 23942)

Dranginis, DiPentima and Hennessy, Js.

---

Argued December 2, 2003—officially released February 17, 2004

*Mark D. Malley*, with whom, on the brief, was *Stephen R. Turner, Jr.*, for the appellant (plaintiff).

*Rosemarie T. Weber*, with whom were *Mary Ambrogio Cashman* and, on the brief, *Joel M. Fain* and *Tracey M. Lane*, for the appellee (defendant Waterbury Young Men's Christian Association).

*Opinion*

DRANGINIS, J. The issue in this personal injury action is whether the organizer of a recreational athletic league is liable for the injuries a competitor sustains during the heat of the game. Under the facts alleged in the complaint, the organizer of the league is not responsible for the plaintiff's injuries, as nothing it did

or did not do was the legal cause of those injuries. We therefore affirm the judgment of the trial court.

The plaintiff, Scott D. Vaillancourt, appeals from the judgment of the trial court rendered on the granting of the motion for summary judgment filed by the defendant Waterbury Young Men's Christian Association (YMCA). On appeal, the plaintiff claims that it was improper for the court to conclude that the YMCA did not owe him a duty of care and that there were no genuine issues of material fact to be resolved at trial. He also claims that the court abused its discretion by denying his request to amend the complaint. We disagree.

The following procedural history is relevant to our resolution of the appeal. In July, 2000, the plaintiff commenced an action for injuries he allegedly sustained while he was playing softball in a league organized by the YMCA. The complaint sounded in five counts against three defendants,[1] but only the fifth count is relevant to this appeal. The plaintiff alleged that in March, 1998, the YMCA solicited teams for its industrial softball league (league). Teams were required to register and to pay a fee to participate in the league. During a league game on July 15, 1998, the plaintiff, the catcher for his team, was attempting to tag the defendant Vaheem Latifi,[2] who was running to home plate from third base. Latifi ran into the plaintiff and caused him to fall to the ground. The plaintiff alleged that Latifi acted with intent and malice. As a result of the collision, the plaintiff suffered injuries, primarily a broken arm. The fifth count also alleged that in exchange for the fee paid by each team, the YMCA was obligated to

[1] The three defendants were Latifi, Costco Wholesale Corporation and the YMCA. The YMCA is the only defendant that is a party to this appeal.

[2] The trial court found that the identity of the named defendant is Faheen Abdul-Lateef. In this opinion, we refer to him as Vaheem Latifi, as the name was spelled on the complaint and on the judgment file.

provide competitors with facilities, organization and instruction "to run a safe league."

In its answer, the YMCA denied, among other things, that it was obligated to provide a safe league and that it had been negligent. The YMCA thereafter filed a motion claiming that it was entitled to summary judgment as a matter of law because the umpire on the date of the game was an independent contractor,[3] it did not owe the plaintiff a duty of care and nothing that it did or did not do was the legal cause of the plaintiff's injuries. In granting the motion for summary judgment, the court concluded that there was no evidence before it regarding the scope of the duty, either direct or vicarious, that the YMCA owed the plaintiff or that it had breached its duty. We affirm the judgment of the trial court, albeit on different grounds,[4] as we conclude that nothing the YMCA did or did not do was the legal cause of the plaintiff's injuries.

I

On appeal, the plaintiff claims that it was improper for the court to conclude that the YMCA did not owe him an independent or vicarious duty of care and that there were no genuine issues of material fact in that regard. As a matter of law, the YMCA did not owe the plaintiff a duty of care, as nothing alleged in the complaint was the legal cause of his injuries.

[3] The court concluded that the YMCA had failed to demonstrate that there was no genuine issue as to whether the umpire was its agent or an independent contractor. That factual issue, however, is not a material fact relevant to the motion for summary judgment.

[4] In ruling on a motion for summary judgment, the court is not to decide issues of fact; its function is to determine whether there are genuine issues of material fact. See *Field* v. *Kearns*, 43 Conn. App. 265, 270, 682 A.2d 148, cert. denied, 239 A.2d 942, 684 A.2d 711 (1996). In opposing a motion for summary judgment, a party is not required to present evidence necessary to prevail at trial, only evidence sufficient to raise issues of fact. We may affirm the judgment of the court on different grounds. See *Kalas* v. *Cook*, 70 Conn. App. 477, 485, 800 A.2d 553 (2002).

The standard of review for a challenge to the granting of a motion for summary judgment is well established. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Gold* v. *Greenwich Hospital Assn.*, 262 Conn. 248, 253, 811 A.2d 1266 (2002). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994).

"A material fact is a fact that will make a difference in the result of the case. . . . *The facts at issue are those alleged in the pleadings.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 315, 757 A.2d 608, cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Internal quotation marks omitted.) *Marchetti* v. *Ramirez*, 40 Conn. App. 740, 747, 673 A.2d 567 (1996), aff'd, 240 Conn. 49, 688 A.2d 1325 (1997). The allegations contained in paragraph nine of count five of the complaint are those that are key to the motion for summary judgment.

The plaintiff's cause of action "invokes the well established proposition that a tortfeasor is liable for all damages proximately caused by its negligence." *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 604, 724 A.2d 497 (1999). The elements of a negligence cause of action are duty,

breach, proximate cause and injury. *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994).

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . [L]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct." (Citations omitted; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 24–25, 734 A.2d 85 (1999).

"Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . In negligence cases such as the present one, in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff." (Citations omitted.) *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, supra, 247 Conn. 604.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that

no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised." (Citations omitted; internal quotation marks omitted.) *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997).

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world." (Citations omitted; internal quotation marks omitted.) Id., 406.

Our Supreme Court has recognized that the very nature of athletic competition makes it reasonably foreseeable that competitors may be injured during the contest. Id., 407. "In athletic competitions, the object obviously is to win. In games, particularly those played by teams and involving some degree of physical contact, it is reasonable to assume that the competitive spirit of the participants will result in some rules violations and injuries. . . . Some injuries may result from such violations, but such violations are nonetheless an accepted part of any competition." Id., 407–408.

The issue in *Jaworski* was the duty of care owed by one participant to another to prevent injuries from occurring during competition. Our Supreme Court appreciated the tension between promoting vigorous

athletic competition and protecting competitors. As a matter of policy, it concluded that a balance between the two objectives can be achieved "by allowing a participant in an athletic contest to maintain an action against a coparticipant only for reckless or intentional conduct and not for merely negligent conduct." Id., 409.

Although *Jaworski* concerned soccer players, it is equally foreseeable to us that injuries will occur to competitors in a game of softball.[5] As a matter of public policy, we acknowledge the tension between promoting competition via athletic leagues and protecting competitors from injury. Here, we need not decide the type of action an injured athlete must allege to prevail against the organizer of an athletic league. Instead, we conclude that the plaintiff failed to allege material facts with respect to the mechanism of his injury that gave rise to a duty owed him by the YMCA.[6] The negligent acts the plaintiff alleged were not the proximate cause of his injury.

The plaintiff alleged that in exchange for a fee, the YMCA owed competitors a duty to operate the league safely. According to the plaintiff, the YMCA breached that duty by failing to select, employ and train its umpires to protect and to prevent vicious attacks on competitors.[7] The essence of the plaintiff's claim is that

---

[5] In *Jaworski* v. *Kiernan*, supra, 241 Conn. 399, our Supreme Court cited the facts of *Crawn* v. *Campo*, 136 N.J. 494, 496, 643 A.2d 600 (1994). "[T]he [p]laintiff was playing catcher in a pickup softball game and was injured when [the] defendant, attempting to score from second base, either slid or ran into him at home plate." (Internal quotation marks omitted.) *Jaworski* v. *Kiernan*, supra, 411.

[6] In resolving this appeal, we do not imply that under different factual allegations, the YMCA would not have owed league participants a duty of care.

[7] Paragraph nine of count five also alleged in relevant part that the YMCA was negligent in "failing to immediately remove . . . Latifi from the game when it was evident from his statements and actions immediately preceding the intentional, willful and malicious attack on the plaintiff . . . that . . . Latifi was a danger to other players . . . ." The plaintiff withdrew that allegation during oral argument in this court.

the umpire failed to prevent Latifi's running into the plaintiff. That claim is predicated on the assumption that Latifi demonstrated unsportsmanlike behavior prior to the collision. The plaintiff concedes, however, that Latifi did nothing prior to the collision to alert anyone that he intended to cause the plaintiff harm or to otherwise require Latifi's removal from the game. Individuals who serve as officials at athletic competitions are not clairvoyant, and we do not presume that they can foresee a malicious and intentional act of bad sportsmanship such as that alleged by the plaintiff.[8] As a matter of law, the umpire's failure to eject Latifi from the game prior to the time he ran into the plaintiff was not the proximate cause of the plaintiff's injuries.

In his brief and at oral argument, the plaintiff argued that the YMCA was responsible for his injuries because it did not ensure that the umpire informed the competitors of the rules of the league, particularly the rule that a runner coming to home plate must slide rather than knock down the catcher. Although the plaintiff did not allege that the YMCA was negligent in that manner, he made the argument at the hearing on the motion for summary judgment. The court informed the plaintiff that the argument was not relevant because the allegation was not in the complaint. We agree with the court; nonetheless, we will address the plaintiff's argument on appeal because the YMCA had an opportunity to

The plaintiff also alleged that the YMCA was negligent because it failed to render proper first aid to him. That allegation was not addressed in the YMCA's motion for summary judgment or in the parties' appellate briefs. It is a matter of common knowledge that first aid is rendered after an injury is sustained. The complaint contains no factual allegations that the absence or manner of first aid administered to the plaintiff caused him any injury beyond that which he sustained when Latifi collided with him. The plaintiff, therefore, failed to allege an injury, which is an essential element of a negligence cause of action. See *Santopietro* v. *New Haven*, 239 Conn. 207, 225, 682 A.2d 106 (1996).

[8] We do not imply that Latifi acted with intent and malice when he collided with the plaintiff.

address it and doing so will settle the issue at the heart of the request to amend. See part II.

The plaintiff contends that had the umpire ensured that everyone who participated in the game on July 15, 1998, knew of the slide rule, the plaintiff would not have been injured. We are not persuaded. Highly competitive members of athletic teams often take chances and risks that cause them to forget or to ignore the rules of the game. Their intent is to win, however, not to hurt other competitors. For that reason, an injured competitor must allege and prove recklessness against the competitor who causes an injury. See *Jaworski* v. *Kiernan*, supra, 241 Conn. 409.

Furthermore, both this court and our Supreme Court have concluded that even when an actor has been warned or is aware of behavior that creates a risk of injury to others, the actor may fail to take heed. See *Haesche* v. *Kissner*, supra, 229 Conn. 222 (teenager whose parents forbid him to use BB gun shot friend in eye during game); *Weigold* v. *Patel*, 81 Conn. App. 347, 357, 840 A.2d 19 (2004) (woman who knew she fell asleep while operating motor vehicle continued to do so). We cannot speculate here about what might have happened if the umpire had informed Latifi of the slide rule. At oral argument, the plaintiff conceded that no one can guarantee that a competitor will abide by the rules of the game.

We conclude that the court properly granted the YMCA's motion for summary judgment because the complaint failed to allege any acts or omissions of the YMCA that were the legal cause of the plaintiff's injuries. As a matter of law, therefore, the YMCA did not owe the plaintiff a duty of care.

II

The plaintiff's second claim is that the court abused its discretion by denying his request to file an amended

complaint. See *Isaac* v. *Truck Service, Inc.*, 52 Conn. App. 545, 548, 727 A.2d 755 (1999), aff'd, 253 Conn. 416, 752 A.2d 509 (2000). The plaintiff, however, has failed to provide an adequate record for our review, which is the appellant's responsibility. See Practice Book § 61-10.

The following facts are relevant. On September 20, 2002, in response to the YMCA's motion for summary judgment, the plaintiff simultaneously filed an objection to the motion for summary judgment and a request to amend his complaint.[9] The YMCA filed an objection to the request to amend, arguing six reasons why it should be denied. The plaintiff filed a reply and reclaimed the request to amend to the short calendar. The court denied the plaintiff's request to amend on the papers without stating a reason. The plaintiff failed to seek an articulation. See Practice Book § 66-5. Consequently, we have no way of knowing why the court denied the plaintiff's request to amend and will not review the claim.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The plaintiff sought to amend paragraph nine of count five to allege that the YMCA was negligent in that it failed to select, employ and train its umpires to protect and to prevent vicious attacks on players in the league and *failed to apprise all participating teams of its rules and regulations.* See part I.

[10] At oral argument, the plaintiff argued, on the basis of *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 804 A.2d 823 (2002), that the record is adequate for review. In *Journal Publishing Co.*, the court filed a memorandum of decision, and the defendant filed a motion for articulation that was denied. Id., 687. Our Supreme Court concluded that the memorandum of decision was adequate for review because it stated the facts and law on which the trial court had relied. Id., 688. Here, there is not even a transcript for us to review.